# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0748

═══════════

CITY OF LAREDO, TEXAS, PETITIONER,

v.

LAREDO MERCHANTS ASSOCIATION, RESPONDENT

════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

════════════════════════════════════════

**Argued January 11, 2018**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

JUSTICE GUZMAN filed a concurring opinion, in which JUSTICE LEHRMANN joined.

JUSTICE BLACKLOCK did not participate in the decision.

The roving, roiling debate over local control of public affairs has not, with increased age, lost

any of its vigor. From public education[1] to immigration policy[2] to fracking[3] to shopping bags, the

---

[1] Although "[n]early all [the framers of the Texas Constitution of 1876] were for local control, having chafed under the centrally controlled schools of the Reconstruction Era", *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 786 (Tex. 2005), arguments for more state control of public education abound.

[2] *See City of El Cenizo v. Texas*, 890 F.3d 164, __ (5th Cir. 2018) (upholding, in substantial part, the constitutionality of Senate Bill 4, Act of May 3, 2017, 85th Leg., R.S., ch. 4, § 1.01, 2017 Tex. Gen. Laws 7 (codified at TEX. GOV'T CODE § 752.051), which "forbids 'sanctuary city' policies throughout the state").

[3] *See* Act of May 4, 2015, 84th Leg., R.S., ch. 30, § 2, 2015 Tex. Gen. Laws 971 (codified at TEX. NAT. RES. CODE § 81.0523) (prohibiting local ordinances that "ban[], limit[], or otherwise regulate[] an oil and gas operation", TEX. NAT. RES. CODE § 81.0523(b)).

sides are always deeply divided.[4] "Judges have no dog in this fight. Our duty is to apply the rules fairly and equally to both sides."[5]

The Texas Constitution states that city ordinances cannot conflict with state law.[6] The Texas Solid Waste Disposal Act ("the Act") provides that "[a] local government . . . may not adopt an ordinance . . . to . . . prohibit or restrict, for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law".[7] The sharply contested issue here is whether the Act preempts, and thus invalidates, a local antilitter ordinance prohibiting merchants from providing "single use" plastic and paper bags to customers for point-of-sale purchases.[8] The

---

[4] *Compare Local Government: Legislator's Guide to the Issues 2017–2018*, TEX. PUB. POL'Y FOUND., https://www.texaspolicy.com/library/doclib/Local-Control-copy.pdf (last visited June 20, 2018), *with* Richard C. Schragger, *The Attack on American Cities*, 96 TEXAS L. REV. 1163, 1232 (2018) ("For some, the states' primacy in the constitutional system may be not only defensible but worthy of celebration. Others might find the Constitution's anti-urban bias to be troubling for reasons of equal treatment or because it generates disfavored policy outcomes.").

[5] *United States v. Howard*, 793 F.3d 1113, 1115 (9th Cir. 2015) (Kozinski, J., concurring). For what it's worth, "[a] person commits an offense if the person intentionally or knowingly . . . causes a dog to fight with another dog" or "attends as a spectator an exhibition of dog fighting." TEX. PENAL CODE § 42.10(a)(1), (6). The latter is a Class A misdemeanor, the former a state jail felony. *Id.* § 42.10(e).

[6] TEX. CONST. art. XI, § 5(a) ("[N]o . . . ordinance passed under [a city] charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State.").

[7] TEX. HEALTH & SAFETY CODE § 361.0961(a)(1). The full text of Section 361.0961(a) states:

(a) A local government or other political subdivision may not adopt an ordinance, rule, or regulation to:

   (1) prohibit or restrict, for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law;

   (2) prohibit or restrict the processing of solid waste by a solid waste facility, except for a solid waste facility owned by the local government, permitted by the commission for that purpose in a manner not authorized by state law; or

   (3) assess a fee or deposit on the sale or use of a container or package.

[8] LAREDO, TEX., CODE OF ORDINANCES §§ 33-504 to 33-505.

trial court upheld the ordinance, but a divided court of appeals reversed, holding that it is preempted by the Act.[9]

Both sides of the debate and the many amici curiae who have weighed in assert public-policy arguments raising economic, environmental, and uniformity concerns.[10] But those arguments are not ours to resolve. "The wisdom or expediency of the law is the Legislature's prerogative, not ours."[11] We must take statutes as they are written,[12] and the one before us is written quite clearly. Its limitation on local control encompasses the ordinance. We affirm the judgment of the court of appeals.

## I

As part of a strategic plan to create a "trash-free" city, the City of Laredo adopted an ordinance to reduce litter from one-time-use plastic and paper bags ("the Ordinance").[13] To

---

[9] No. 04-15-00610-CV, 2016 WL 4376627, at *8 (Tex. App.—San Antonio Aug. 17, 2016) (mem. op.) (2–1 decision).

[10] Amicus briefs were filed by The Honorable Jose Aliseda; BCCA Appeal Group, Inc.; City of Galveston; City of Houston; Environment Texas, Natural Grocers, and Bicycle Sport Shop; Frances Hagga; Rio Grande International Study Center; State of Texas; Texans for Clean Water, Inc.; Texas Black Bass Unlimited, Edward Parten, Shane Cantrell, Joey Farrah, Scott Hickman, J.T. Van Zandt, and Robert Webb; Texas Campaign for the Environment; Texas Cotton Ginners' Association and Billy Joe Easter; Texas Municipal League and Texas City Attorneys Association; Texas Public Policy Foundation; Texas Retailers Association; Turtle Island Restoration Network; Gerry Willis; and Texas State Senator Judith Zaffirini.

[11] *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968).

[12] *See Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920) ("Courts must take statutes as they find them. More than that, they should be willing to take them as they find them."); *see also Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 584 (Tex. 2015); *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 614 (Tex. 2006) (orig. proceeding); *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 123 (Tex. 1999).

[13] *See* Laredo, Tex., Ordinance 2014-O-064 (June 2, 2014) (codified, as amended, at LAREDO, TEX., CODE OF ORDINANCES § 33-501) (noting in the preliminary statement that "in December 2003, the City Council adopted a strategic plan that included . . . a goal to create a 'trash-free' city").

discourage use of these bags, the Ordinance makes it unlawful for any "commercial establishment" to provide or sell certain plastic or paper "checkout bags" to customers.[14] The ordinance applies to commercial enterprises that sell retail goods to the general public and includes the business's employees and associated independent contractors.[15] A violation is punishable as a Class C misdemeanor with a fine of up to $2,000 per violation plus court costs and expenses.[16]

The Ordinance's stated objectives are:

---

[14] LAREDO, TEX., CODE OF ORDINANCES § 33-505. Subject to certain exceptions, a prohibited "checkout bag" is (1) "a plastic one-time-use carryout bag that is provided by a commercial establishment to a customer at the point of sale or elsewhere in the commercial establishment, and is less than four (4) mils thick"; or (2) "a single-use paper bag." *Id.* § 33-504. A "single-use paper bag" is "a checkout bag provided by a commercial establishment at the point of sale or elsewhere in the commercial establishment that is made from paper and contains old growth fiber and/or contains less than forty (40) percent post-consumer recycled material." *Id.* The ordinance does not apply to:

> (1)  Laundry, dry cleaning bags, door-hanger bags, newspaper bags, or packages of multiple bags intended for use as garbage, pet waste, or yard waste;
>
> (2)  Bags provided by pharmacists or veterinarians to contain prescription drugs or other medical necessities;
>
> (3)  Bags used by restaurants to take away prepared food[];
>
> (4)  Bags used by a consumer inside a business establishment to:
>
>> a.  Contain bulk items, such as produce, nuts, grains, candy, or small hardware items;
>>
>> b.  Contain or wrap frozen foods, meat, or fish, whether or not prepackaged;
>>
>> c.  Contain or wrap flowers, potted plants or other items to prevent moisture damage to other purchases; or
>>
>> d.  Contain unwrapped prepared foods or bakery goods; and
>>
>> e. [sic]  Bags used by a non-profit or charity to distribute food, grocery products, clothing, or other household items.

*Id.* § 33-507.

[15] *Id.* § 33-504.

[16] *Id.* § 33-508.

4

(a)     To promote the beautification of the city through prevention of litter generated from discarded checkout bags.

(b)     To reduce costs associated with floatable trash controls and the maintenance of the municipal separate stormwater sewer system.

(c)     To protect life and property from flooding that is a consequence of improper stormwater drainage attributed in part to obstruction by litter from checkout bags.[17]

The Ordinance declares that its purpose is to "reduce litter from discarded plastic bags" in order to "help bring the City one step closer to being a trash-free city".[18] The Ordinance, in its words, "is not a ban on plastic bags, but an incremental implementation plan towards a cleaner city".[19]

Shortly before the Ordinance's effective date, the Laredo Merchants Association (the Merchants) sued the City to forestall its enforcement. The Merchants sought declaratory and injunctive relief, asserting that the Ordinance is preempted by Section 361.0961 of the Act and thus void under the Texas Constitution.[20] That provision, as important here, expressly precludes a local government from prohibiting or restricting "the sale or use of a container or package" if the restraint is for "solid waste management purposes" and the "manner" of regulation is "not authorized by state law".[21]

---

[17] *Id.* § 33-501.

[18] Laredo, Tex., Ordinance 2014-O-064 (preliminary statement) (now codified, as amended, at CODE OF ORDINANCES § 33-501).

[19] *Id.*

[20] *See* TEX. CONST. art. XI, § 5.

[21] TEX. HEALTH & SAFETY CODE § 361.0961(a)(1).

The City moved for summary judgment, arguing that the Act does not clearly and unmistakably preempt a municipality from banning single-use bags. According to the City, the Act does not preempt its Ordinance because:

- the statutory terms "container" and "package" refer to a closed vessel or wrapping, not "bags";

- the Ordinance was not enacted for a "solid waste management purpose[]" because it regulates activities occurring before single-use bags become trash;

- the Ordinance is "authorized by" Texas Local Government Code Section 551.002, which generally permits a home-rule municipality, like the City, to enact regulations to protect streams and watersheds;[22] and

- the Ordinance is a valid exercise of the City's police power.

In a cross-motion for partial summary judgment, the Merchants asserted that:

- a "bag" is a "container" within the plain and ordinary meaning of the statutory term;

- nothing in the Solid Waste Disposal Act supports the City's circumscribed construction of "solid waste management purposes";

- the Ordinance's purpose, both stated and effective, is to systematically control the generation of a particular form of solid waste, which is a "solid waste management purpose[]"; and

- whether the City was exercising its police powers in enacting the Ordinance is irrelevant to the preemption inquiry.

The trial court granted the City's motion for summary judgment and denied the Merchants' motion, holding, without elaboration, that the Ordinance is not void because reasonable constructions exist under which both the Act and the Ordinance could be effective.

---

[22] *See* TEX. LOC. GOV'T CODE § 551.002 (a)–(b).

A divided court of appeals reversed, rendered judgment declaring that the Act preempts the Ordinance, and remanded for consideration of the Merchants' claim for attorney fees.[23] Relying on defined statutory terms and the plain meaning of undefined terms, the court concluded that a plastic or paper bag is a "container" or "package" within the Act's meaning; the Ordinance has a solid waste management purpose and effect; and the City is not empowered by state law to prohibit the sale or use of plastic and paper bags.[24] The dissenting justice discerned implicit limits on the meaning of the term "container" from variant uses of that term elsewhere in the Act and from its structure.[25] In the dissent's view, the Act's preemption provision "may reasonably be construed as applying to *solid waste containers* used to store, transport, process, or dispose of solid waste, particularly those used by solid waste facilities and those used in medical waste management."[26] Thus, the dissent concluded, the Ordinance does not regulate solid waste containers, and the Act does not preempt it.[27]

---

[23] No. 04-15-00610-CV, 2016 WL 4376627, at *1, *8 (Tex. App.—San Antonio Aug. 17, 2016) (mem. op.) (2–1 decision).

[24] *See id.* at *5–7; *see also id.* at *7 ("The Ordinance does exactly what the Act intends to prevent—regulate the sale or use of plastic bags for solid waste management purposes.").

[25] *See id.* at *8 (Chapa, J., dissenting).

[26] *Id.* at *14.

[27] *Id.*

7

We granted the City's petition for review,[28] in part because similar ordinances have been enacted by other municipalities.[29]

## II

## A

As a home-rule municipality, the City of Laredo possesses the "full power of local self-government."[30] But Article XI, Section 5(a) of the Texas Constitution provides that home-rule city ordinances must not "contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."[31] While home-rule cities have all power not denied by the Constitution or state law, and thus need not look to the Legislature for grants of

---

[28] 60 Tex. Sup. Ct. J. 1607 (Sept. 1, 2017). Amicus curiae, the City of Houston, argues (the parties do not) that the Court lacks jurisdiction over the case because the Ordinance is penal in nature, not civil, and therefore can be challenged only in defense to a criminal prosecution for violating it. *See State v. Morales*, 869 S.W.2d 941, 944–945 (Tex. 1994) (explaining that where the party challenging the constitutionality of a criminal statute or ordinance is being prosecuted, or the threat of prosecution is imminent, "the meaning and validity of [the] statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction" (quoting *Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 63 (Tex. 1969))). But civil courts have jurisdiction to enjoin or declare void an unconstitutional penal ordinance when "there is the threat of irreparable injury to vested property rights." *Id.* at 945; *see also Passel*, 440 S.W.2d at 63; *State v. Logue*, 376 S.W.2d 567, 569 (Tex. 1964) (orig. proceeding). That rule applies here, where the ordinance prohibits the complaining vendors from using noncompliant bags and, if they do, imposes a substantial per-violation fine that effectively precludes small local businesses from testing the ban's constitutionality in defense to a criminal prosecution. *See Austin v. Austin City Cemetery Ass'n*, 28 S.W. 528, 529–530 (Tex. 1894) (holding that a cemetery owner could sue to enjoin the enforcement of a city ordinance restricting the location of cemeteries). We have jurisdiction over the case.

[29] *See* EAGLE PASS, TEX., CODE OF ORDINANCES § 16-84; CORPUS CHRISTI, TEX., CODE OF ORDINANCES § 22-10; Port Aransas, Tex., Ordinance No. 2014-15, § 10-26; KERMIT, TEX., CODE OF ORDINANCES § 98.01; SUNSET VALLEY, TEX., CODE OF ORDINANCES § 93-61; AUSTIN, TEX., CODE OF ORDINANCES § 15-6-121; Freer, Tex., Ordinance No. 2012-05; Laguna Vista, Tex., Ordinance No. 2012-23; SOUTH PADRE ISLAND, TEX., CODE OF ORDINANCES § 12-30.1; BROWNSVILLE, TEX., CODE OF ORDINANCES § 46-49; FT. STOCKTON, TEX., CODE OF ORDINANCES § 12-19.

[30] TEX. LOC. GOV'T CODE § 51.072(a).

[31] TEX. CONST. art. XI, § 5(a).

8

authority, the Legislature can limit or withdraw that power by general law.[32] Deciding whether uniform statewide regulation or nonregulation is preferable to a patchwork of local regulations is the Legislature's prerogative.[33] The question is not whether the Legislature *can* preempt a local regulation like the Ordinance but whether it *has*.

A statutory limitation of local laws may be express or implied,[34] but the Legislature's intent to impose the limitation "must 'appear with unmistakable clarity.'"[35] The mere "entry of the state into a field of legislation . . . does not automatically preempt that field from city regulation".[36]

---

[32] *Glass v. Smith*, 244 S.W.2d 645, 649 (Tex. 1951) ("Any rights conferred by or claimed under the provisions of a city charter . . . are subordinate to the provisions of the general law."); *accord BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016) ("Home-rule cities possess the power of self-government and look to the Legislature not for grants of authority, but only for limitations on their authority."); *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013) (same); *Wilson v. Andrews*, 10 S.W.3d 663, 666 (Tex. 1999) ("[T]he Legislature can limit or augment a [home-rule] city's self-governance."); *Dall. Merchs. & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–491 (Tex. 1993) (same); *Tyra v. City of Houston*, 822 S.W.2d 626, 628 (Tex. 1991) ("The Texas Constitution prohibits a city from acting in a manner inconsistent with the general laws of the state. Thus, the legislature may, by general law, withdraw a particular subject from a home rule city's domain." (citation omitted)); *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990) (home-rule cities have broad discretionary powers provided that no ordinance conflicts with the Texas Constitution or state law); *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643–644 (Tex. 1975) (home-rule cities have "full authority to do anything the legislature could theretofore have authorized them to do" subject to legislatively expressed limitations on their powers); *City of Beaumont v. Fall*, 291 S.W. 202, 205–206 (Tex. 1927) ("[W]hen the state itself steps in and makes a general law and applies such law to all cities of a certain class, then . . . no city of the same class is authorized, under our Constitution, to enact contrary legislation.").

[33] *See BCCA Appeal Grp., Inc.*, 496 S.W.3d at 14 (invalidating an ordinance that "thwart[ed] the Legislature's intent that 'uniformity . . . prevail throughout the state'" with respect to regulation of air pollution (quoting *City of Weslaco v. Melton*, 308 S.W.2d 18, 19–20 (Tex. 1957))); *see also City of El Cenizo v. Texas*, 890 F.3d 164, __ (5th Cir. 2018) ("For better or for worse, Texas can 'commandeer' its municipalities this way.").

[34] *See Lower Colo. River Auth.*, 523 S.W.2d at 645 ("A limitation on the power of home rule cities by general law . . . may be either an express limitation or one arising by implication."); *Glass*, 244 S.W.2d at 649.

[35] *Lower Colo. River Auth.*, 523 S.W.2d at 645 (quoting *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex. 1964)); *accord BCCA Appeal Grp., Inc.*, 496 S.W.3d at 7; *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002) (orig. proceeding).

[36] *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982); *see City of Richardson*, 794 S.W.2d at 19 ("[T]he mere fact that the legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted.").

Rather, "local regulation, ancillary to and in harmony with the general scope and purpose of the state enactment, is acceptable."[37] Absent an express limitation, if the general law and local regulation can coexist peacefully without stepping on each other's toes, both will be given effect or the latter will be invalid only to the extent of any inconsistency.[38]

In this case, legislative intent in the Act to preempt local law is clear. The Act states that "[a] local government or other political subdivision may not adopt" certain ordinances.[39] The issue is whether the Ordinance falls within the Act's ambit.[40] To decide that, we look, as usual, to the statutory text and the ordinary meanings of its words.[41]

**B**

The Act provides, "It is this state's policy and the purpose of [the Act] to safeguard the health, welfare, and physical property of the people and to protect the environment by controlling the management of solid waste".[42] To that end, "the state's goal, through source reduction, [is] to

---

[37] *City of Brookside Village*, 633 S.W.2d at 796 (Tex. 1982).

[38] *See City of Beaumont*, 291 S.W. at 206 ("Of course, a general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached. In other words, both will be enforced if that be possible under any reasonable construction, just as one general statute will not be held repugnant to another unless that is the only reasonable construction.").

[39] TEX. HEALTH & SAFETY CODE § 361.0961(a).

[40] *See In re Sanchez*, 81 S.W.3d at 796 (stating that an ordinance is preempted only "to the extent it conflicts with the state statute").

[41] *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.").

[42] TEX. HEALTH & SAFETY CODE § 361.002(a).

10

eliminate the generation of municipal solid waste . . . to the maximum extent that is technologically

and economically feasible."[43] According to the Act,

> the state's public policy [is] that, in generating, treating, storing, and disposing of municipal solid waste . . . , the methods listed [below] are preferred to the extent economically and technologically feasible and considering the appropriateness of the method to the type of solid waste material . . . generated, treated, disposed of, or stored[:]
>
> *          *          *
>
> (1)     source reduction and waste minimization;
> (2)     reuse or recycling of waste;
> (3)     treatment to destroy or reprocess waste to recover energy or other beneficial resources if the treatment does not threaten public health, safety, or the environment; or
> (4)     land disposal.[44]

The Act thus describes a state interest in "controlling the management of solid waste"[45] that

is plenary. The Act's preemption of local control is narrow and specific, applying to ordinances that

"prohibit or restrict, [1] for solid waste management purposes, [2] the sale or use of a container or

package [3] in a manner not authorized by state law".[46] The City argues that its Ordinance does not

meet any of these elements. We address each in turn.

---

[43] *Id.* § 361.022(a).

[44] *Id.* § 361.022(a)–(b).

[45] *Id.* § 361.002(a).

[46] *Id.* § 361.0961(a)(1).

11

**1**

The Act does not define the phrase "solid waste management purposes" but does define its constituent parts. "[S]olid waste" means "discarded material", including "rubbish",[47] which is "nonputrescible solid waste . . . that consists of . . . combustible waste materials, including paper . . . [and] plastics".[48] "'Management' means the systematic control of the activities of generation, source separation, collection, handling, storage, transportation, processing, treatment, recovery, or disposal of solid waste."[49] The term "management" thus refers to institutional controls imposed at any point in the solid waste stream, from generation of solid waste to disposal.

The Ordinance's stated purpose and its intended effect are to control the generation of solid waste by reducing a source of solid waste on the front end so those single-use materials cannot be inappropriately discarded on the back end. The City contends that this is "source reduction", defined by the Act as "an activity or process that avoids the creation of municipal solid waste in the state by reducing waste at the source".[50] The purpose of the Ordinance cannot be "solid waste management", the City argues, because at the moment of regulatory restraint, the bags have not yet been discarded and, therefore, are not yet "solid waste". But "management" includes "the systematic control of the . . . generation . . . of solid waste" as well as its handling after it is created.[51] The Act does not define

---

[47] *Id.*

[48] *Id.* § 361.003(31)(A).

[49] *Id.* § 361.003(18).

[50] *Id.* § 361.421(9).

[51] *Id.* § 361.003(18).

12

"generation", so we give the word its ordinary meaning—to generate is "to cause to be: bring into existence".[52] The Ordinance's stated purposes are to reduce litter and eliminate trash—in sum, to manage solid waste, which the Act preempts. The Ordinance cannot fairly be read any other way.

But, the City argues, the Ordinance has other, independent, and distinct purposes for prohibiting the provision of single-use bags, such as preventing sewer blockages and flooding, promoting beautification, ameliorating the economic impact of this particular form of litter, and protecting water and wildlife. All of these salutary objectives pertain to the ancillary effects of reducing the generation of solid waste, which is a solid waste management purpose. The Ordinance's solid waste management cannot avoid preemption merely because it has other purposes.

We think it clear that the Ordinance was adopted for solid waste management purposes.

**2**

In the City's view, the Act does not clearly apply to new bags for point-of-sale purchases because the term "bag" is not used in the statute and the statute is contextually focused on trash, not new items. As the City sees it, no matter how likely or expeditiously single-use bags are destined to become trash, the Act's reach is limited to either (1) containers and packages that have already

---

[52] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 945 (2002); *see also* NEW OXFORD AMERICAN DICTIONARY 722 (3d ed. 2010) (definitions of "generate" include "to arise or come about" and "produce"). The City argues that we should look instead to the definition of "generator" used by the Texas Commission on Environmental Quality in its regulations: "Any person, by site or location, that produces solid waste to be shipped to any other person, or whose act or process produces a solid waste or first causes it to become regulated." 30 TEX. ADMIN. CODE § 330.3(58). Extrapolating, this definition might be read to suggest that "generation" includes causing solid waste to be produced or first causing it to be regulated. That would seem to include the dictionary meaning. In any event, the City draws no parallel between a "generator" in the regulations and "generation" in the Act. The dictionary definition is therefore preferable.

13

been discarded, or (2) containers and packages that store or transport garbage, like dumpsters. Again, the City's narrow construction is not supported by a plain reading of the statute.

Neither "container" nor "package" is statutorily defined, so we begin by looking to the words' ordinary meanings. A "container" is "an object that can be used to hold or transport something";[53] "a receptacle (as a box or jar) or a formed or flexible covering for the packing or shipment of articles, goods, or commodities".[54] The term "package" refers to "a commodity in its container: a unit of a product uniformly processed, wrapped, or sealed for distribution [like cigarettes or fruits and vegetables]"; "a covering wrapper or container . . . [such as] a protective unit for storing or shipping a commodity";[55] "an object or group of objects wrapped in paper or plastic, or packed in a box"; and "the box or bag in which things are packed."[56] A "bag," commonly understood, is "a container made of paper, cloth, mesh, metal foil, plastic, or other flexible material . . . for properly holding, storing, carrying, shipping, or distributing any material or product".[57] A single-use paper or plastic bag used to hold retail goods and commodities for transportation clearly falls within the ordinary meaning of "container". The Ordinance itself repeatedly characterizes bags

---

[53] NEW OXFORD AMERICAN DICTIONARY, *supra* note 52, at 374.

[54] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* note 52, at 491; *see* WEBSTER'S NEW WORLD COLLEGE DICTIONARY 320 (5th ed. 2014) (defining "container" as "a thing that . . . can contain something; box, crate, can, jar, etc.").

[55] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* note 52, at 1617.

[56] NEW OXFORD AMERICAN DICTIONARY, *supra* note 52, at 1257; *see* WEBSTER'S NEW WORLD COLLEGE DICTIONARY, *supra* note 54, at 1047 (substantially the same).

[57] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* note 52, at 162; *see* NEW OXFORD AMERICAN DICTIONARY, *supra* note 52, at 122 (defining "bag" as "a container of flexible material with an opening at the top, used for carrying things: *brown paper bags / a shopping bag*"); WEBSTER'S NEW WORLD COLLEGE DICTIONARY, *supra* note 54, at 108 (substantially the same).

14

as containers.[58] Construing the term "container" to exclude bags is incompatible with the common use and understanding of that word.

But the common understanding of the words is only the beginning of the inquiry. We must also consider the statutory context to determine whether the Legislature intended a narrower or more specialized meaning than the words used would ordinarily carry. In their immediate context, the words "container" and "package" are not accompanied by words modifying or restricting the terms in the way the City suggests, neither in Section 361.0961(a)(1),[59] which is at issue here, nor in subsection (a)(3), which prohibits local governments from "assess[ing] a fee or deposit on the sale or use of a container or package."[60] By the latter provision, a "container or package" is something that can be sold or used for a fee or deposit, that is, something that is not already trash. While a discarded container might yet be sold, it would never be subject to a deposit, designed to secure its return.[61] One would expect a deposit to be assessed on an item that was not trash at the time of assessment but likely to become trash, not the other way around.

---

[58] The Ordinance exempts from the bag ban single-use bags that "contain prescription drugs or other medical necessities"; "[c]ontain bulk items, such as produce, nuts, grains, candy, or small hardware items"; "[c]ontain or wrap frozen foods, meat, or fish, whether or not prepackaged"; "[c]ontain or wrap flowers, potted plants or other items to prevent moisture damage to other purchases"; and "[c]ontain unwrapped prepared foods or bakery goods". LAREDO, TEX., CODE OF ORDINANCES § 33-507(2)–(4).

[59] *See* TEX. HEALTH & SAFETY CODE § 361.0961(a)(1) ("A local government . . . may not adopt an ordinance . . . [that] prohibit[s] or restrict[s], for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law").

[60] *Id.* § 361.0961(a)(3); *see Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) ("Statutory terms should be interpreted consistently in every part of an act.").

[61] The word "deposit" bears widely disparate meanings, but its aptest, most likely sense, for purposes of subsection (a)(3) is something that is in the nature of security or a pledge, as in a bottle deposit.

The alternative limitation the City proposes—receptacles used to hold or transport solid waste—fares no better. The Act does use "container" in that sense but does not restrict the word to that meaning. The word "package" does not appear elsewhere in the Act, but "packaging" does, and its use is consistent with the ordinary understanding of the term, not as a solid waste receptacle.[62] The phrase "container or package" suggests analogous meanings, contrary to the City's argument.

The Act is not concerned solely with discarded materials but also includes regulations applicable to the production, retail sale, and distribution of new consumer goods.[63] If consumer products were to be excluded from the preemption provision, the Legislature would have said so, as it did by excluding consumer products elsewhere in the Act.[64] As a fundamental statutory-construction principle, "[w]e presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."[65] The

---

[62] *See* TEX. HEALTH & SAFETY CODE § 361.421(9)(A) (providing that "[s]ource reduction" includes "redesigning a product or packaging so that less material is ultimately disposed of"); § 361.425(a)(1) (requiring certain state entities to establish programs for separation and collection of all recyclable materials generated by the entity, including "aseptic packaging"); § 361.955(f)(3) (as part of a manufacturer's recovery plan for recycling computer equipment, the manufacturer "may include collection, recycling, and reuse information in the packaging"); § 361.979(g)(3) (television recycling education program must "use television manufacturer-developed customer outreach materials, such as packaging inserts"); § 361.981(b) (retailer of covered television equipment shall provide information regarding recycling the equipment, which may be included "as part of the packaging of the equipment").

[63] *See id.* § 361.138(b) (requiring retail sellers of batteries to charge a waste remediation fee with the sale of each battery); § 361.956(a) (prohibiting retailers from selling new computer equipment unless the products bear specific labeling); §§ 361.974–.975 (imposing labeling requirements as a precondition to manufacturer and retail sales of new television equipment).

[64] *See id.* § 361.181(c)(1) ("The term ['facility'] does not include any consumer product in consumer use or any vessel."); § 361.651(3)(B)(i) (excepting from the definition of "[s]olid waste facility" a "consumer product in consumer use"); § 361.701(7)(B)(i) (same).

[65] *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

16

only reasonable construction of the Act that accords with the statute as a whole is one that affords the terms container and package their ordinary meanings.

**3**

Finally, the City argues that the Ordinance escapes preemption because it is "authorized by state law"[66] as shown by its consistency with various state general laws—laws regarding municipal authority to: protect water sources, the municipal water supply, and watersheds;[67] regulate water systems in a manner that protects the municipality's interests;[68] own, construct, operate, and maintain a water system;[69] adopt and enforce rules pertaining to operating a drainage utility system;[70] maintain and regulate the cleaning of sewers;[71] and establish "a water pollution control and abatement program for the city", including "the development and execution of reasonable and realistic plans for controlling and abating pollution".[72] The City also cites laws imposing liability for damages caused by the operation of the municipality's sewer systems[73] and authorizing cities to impose fines for unsanitary conditions.[74]

---

[66] TEX. HEALTH & SAFETY CODE § 361.0961(a)(1).

[67] TEX. LOC. GOV'T CODE § 551.002.

[68] *See generally id.*

[69] *Id.* § 552.017.

[70] *Id.* § 552.045.

[71] TEX. HEALTH & SAFETY CODE § 342.002.

[72] TEX. WATER CODE § 26.177(a), (b)(5).

[73] TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(9), (32).

[74] TEX. HEALTH & SAFETY CODE § 342.001.

But the Act preempts local regulation "in a *manner* not authorized by state law".[75] The question is not whether a municipality has the power to regulate. Home-rule cities already have the power of self-governance unless restricted by state law. If "authorized by law" in the preemption provision referred only to the power municipalities already have, the restriction would have no effect. But the preemption provision applies to local regulation when the *manner* is not authorized by state law. Manner is *how* something can be done, not merely *if* it can be.[76] A manner must be stated by, and not merely implied from, a grant of authority. The clear, stated intent of the Act is to control the manner of regulating the sale or use of containers or packages for solid waste management purposes. To conclude otherwise would render the statute meaningless.[77]

By rescinding local control that would otherwise exist, the Act forbids home-rule cities from regulating that subject matter. By authorizing regulation only when municipalities are told how to permissibly regulate, the Act requires an express authorization. These circumstances are functionally analogous to how general-law municipalities operate under the law. General-law municipalities lack the power of self-government and must look to the Legislature for express grants of power.[78] So too must a home-rule city whose self-governance has been legislatively abrogated.

---

[75] *Id.* § 361.0961(a)(1) (emphasis added).

[76] *See* NEW OXFORD AMERICAN DICTIONARY 1065 (2010) (defining "manner" as "a way in which a thing is done or happens"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1376 (3d ed. 2002) (defining "manner" as "the mode or method in which something is done or happens: a mode of procedure or way of acting"); WEBSTER'S NEW WORLD COLLEGE DICTIONARY 888 (5th ed. 2014) (substantially the same).

[77] *See Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014) ("We must not interpret the statute 'in a manner that renders any part of the statute meaningless or superfluous.'" (quoting *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008))).

[78] *Town of Lakewood Vill. v. Bizios*, 493 S.W.3d 527, 531 (Tex. 2016).

The Act's exemption does not save the Ordinance because the City has not identified a law authorizing the manner in which the City seeks to regulate. The general grants of regulatory authority the City relies on do not authorize the manner the City has chosen and, more to the point, do not supersede the express directive in the Act.

\* \* \* \* \*

The court of appeals correctly held that the Act preempts the City's Ordinance. Its judgment remanding the case to the trial court to consider the Merchants' claims for attorney fees and costs[79] is therefore

*Affirmed.*

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: June 22, 2018

---

[79] *See* TEX. CIV. PRAC. & REM. CODE § 37.009 (authorizing an award of costs and fees if "equitable and just").