ACCEPTED
15-24-00117-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/9/2025 12:35 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/9/2025 12:35:55 PM
CHRISTOPHER A. PRINE
Clerk

No. 15-24-00117-CV

Fifteenth Court of Appeals
Austin, Texas

# Nariocan Enterprises LLC
# d/b/a Cantu's Pharmacy,
## *Appellant,*

## v.

# Texas Health and Human Services Commission,
## *Appellee*

On appeal from the 98th District Court of Travis County, Texas

## APPELLANT'S REPLY BRIEF

Michael Pruneda
State Bar No. 24025601
michael@michaelpruneda.com
THE PRUNEDA LAW FIRM, PLLC
P.O. Box 1664
Pharr, Texas 78577
p. 956.702.9675

Ricardo Pumarejo Jr.
State Bar No. 24056168
ricardo@pumarejolaw.com
PUMAREJO LAW
1606 W. 42nd Street
Austin, Texas 78756
p. 512.731.7869

*Counsel for Appellant*

1

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................2

INDEX OF AUTHORITIES ..............................................................................3

ARGUMENT ...............................................................................................4

    I.    The trial court erred in granting the Commission's plea to the jurisdiction. .........................................................................................4

    II.   The trial court abused its discretion by not permitting jurisdictional discovery. .......................................................12

    III.  Dismissing Nariocan's claims "with prejudice" was error. ....................15

PRAYER ....................................................................................................16

CERTIFICATE OF COMPLIANCE ......................................................................18

## INDEX OF AUTHORITIES

**Case Law**

*City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586 (Tex. 2018)................................................................................7

*City of Waco v. Tex. Nat. Res. Conservation Comm'n*, 83 S.W.3d 169 (Tex. App.—Austin 2002, pet. denied).............................................5, 7

*Isa v. Pub. Util. Comm'n of Tex.*, 528 S.W.3d 609 (Tex. App.—Texarkana 2017, pet. denied)................................................................8

*Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150 (Tex. 2004) ..........................14

*Patterson v. Planned Parenthood of Houston*, 971 S.W.2d 439 (Tex. 1998) ...................................................................... 6-7

*Rourk v. Cameron Appraisal Dist.*, 131 S.W.3d 285 (Tex. App.—Corpus Christi 2004, *rev'd on other grounds*, 194 S.W.3d 501 (Tex. 2006).........................................................................8

*Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004)................................................................................15

*Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432 (Tex. 1994) ........................................7

**Miscellaneous**

TEX. GOV'T CODE § 2001.038 ................................................................4

TEX. R. APP. P. 43.2.............................................................................16

U.S. CONST. art. VI, cl. 2.....................................................................10

**ARGUMENT**

**I.    The trial court erred in granting the Commission's plea to the jurisdiction.**

**A.    Sovereign immunity does not bar Nariocan's claims.**

The Commission's primary argument—that sovereign immunity insulates it from suit—fails because Nariocan properly invoked two well-established exceptions to immunity. First, Nariocan invoked the Administrative Procedure Act ("APA") to challenge the validity or applicability of the Commission's rule that purportedly requires a physician's prescription for COVID-19 test kits. Texas law expressly waives immunity for such claims. *See* TEX. GOV'T CODE § 2001.038(a) (authorizing declaratory-judgment actions to determine the validity or applicability of a rule that "interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff"). The Commission insists that Nariocan "does not challenge a rule," but that is simply wrong. The "rule" at issue is the requirement that pharmacies obtain a doctor's prescription before dispensing COVID-19 test kits to Medicaid patients—an across-the-board policy of general applicability clearly meeting the APA's definition of a "rule." Nariocan's lawsuit squarely contests the validity and applicability of that requirement, alleging that it conflicts with federal law and should not be enforced against Nariocan. This is exactly the type of claim for which the Legislature has waived immunity. *See* TEX. GOV'T CODE § 2001.038(a).

4

Second, Nariocan's claim that the Commission's actions violate Nariocan's right to due course of law under Article I, § 19 of the Texas Constitution is likewise not barred by immunity. Here, Nariocan seeks only declaratory and injunctive relief to prevent an ongoing violation of law—it does not seek money damages or retroactive relief. The Commission's plea to the jurisdiction did not identify any statute that withdraws immunity for Nariocan's claims, but none is needed when the suit falls under these immunity exceptions. In sum, the trial court had jurisdiction to hear Nariocan's claims notwithstanding immunity, and it erred by concluding otherwise.

## B. Nariocan has suffered a concrete injury and faces imminent enforcement.

In *City of Waco v. Texas Natural Resources Conservation Commission*, the Third Court of Appeals observed the following:

> In determining whether a cause of action is ripe for judicial consideration, [courts] look to see whether the facts have sufficiently developed to show that an injury is likely to occur. A claimant is not required to show that the injury has already occurred, provided the injury is imminent or sufficiently likely. Likewise, a person seeking a declaratory judgment need not have incurred actual injury; a declaratory judgment action will lie if the facts show the presence of ripening seeds of controversy.

83 S.W.3d 169, 175 (Tex. App.—Austin 2002, pet. denied) (citations and internal quotation marks omitted).

The Commission's argument that Nariocan has not suffered a cognizable injury is belied by the record. On January 30, 2024, the Commission issued a preliminary-findings letter to Nariocan, accusing it of violating Medicaid rules by dispensing 10,576 COVID-19 test kits without a prescription. The letter: (1) states these are the Commission's "preliminary findings"; (2) warns that "[a] person may be subject to sanctions" for such conduct; and (3) seeks Nariocan's "input and response to the potential violations." CR:289-90. The letter is not a vague policy statement or informal guidance—it is a formal enforcement notice identifying specific conduct and signaling consequences.

This letter alone imposes immediate harm. Nariocan is compelled to mount a defense, incur legal and compliance costs, and reevaluate its business model under the shadow of possible sanctions. These costs are not speculative; they are being incurred now. The Commission's letter effectively forces Nariocan to choose between two detrimental options: stop providing certain services and lose lawful business opportunities, or continue and face penalties. This "Hobson's choice" constitutes a present injury sufficient to confer standing and to render the case ripe.

The Commission argues that its letter is merely "preliminary" and that no sanction has yet been imposed. But ripeness does not require that a penalty already be levied. As the Texas Supreme Court has made clear, "[a] case is not ripe when its resolution depends on contingent or hypothetical facts, or upon

events that have not yet come to pass." *Patterson v. Planned Parenthood of Houston*, 971 S.W.2d 439, 442 (Tex. 1998). Here, no further factual development is necessary to adjudicate the core legal controversy: whether the Commission's prescription rule is valid and enforceable. Both sides have taken fixed legal positions. The only "event" that remains is the Commission's discretionary decision to impose formal penalties—an event that would only compound, not clarify, the injury. The ripeness doctrine does not require a plaintiff to suffer irreversible harm before asserting its rights.

### C. Texas courts permit pre-enforcement challenges when delay would compound harm.

The Commission's plea hinges on the premise that no justiciable controversy exists until it takes final enforcement action. But Texas courts have routinely rejected that view. Pre-enforcement challenges are permissible where the agency's posture creates a live legal dispute and delay would subject the plaintiff to hardship or place it in legal limbo. For instance, in *City of Laredo v. Laredo Merchants Association*, 550 S.W.3d 586, 590-91 (Tex. 2018), the supreme court permitted a pre-enforcement challenge to a penal ordinance where businesses faced fines if they did not comply. Similarly, in *Texas Education Agency v. Leeper*, 893 S.W.2d 432, 445 (Tex. 1994), the supreme court allowed homeschooling parents to seek declaratory relief before facing any prosecution. And in *City of Waco*, 83 S.W.3d at 177-78, the Third Court of Appeals permitted

7

judicial review of environmental regulations before final permits were issued. These cases show that declaratory relief is appropriate when a legal dispute is crystallized and a delay would magnify harm. That is precisely the situation here. The Commission has taken the position that Nariocan violated a rule and may be sanctioned. Nariocan disputes that the rule is valid or enforceable under state or federal law. No further facts are necessary; the controversy is fit for resolution now.

### D. Exhaustion of administrative remedies is not required or has been excused.

Texas law does not require exhaustion of administrative remedies when pursuing them would be futile or inadequate. *See Isa v. Pub. Util. Comm'n of Tex.*, 528 S.W.3d 609, 617 (Tex. App.—Texarkana 2017, pet. denied) ("Futility is an exception to the requirement that a party seeking judicial review must exhaust his administrative remedies."). Moreover, general exhaustion principles contain exceptions for constitutional claims and questions of law that agencies have no power to decide. *See Rourk v. Cameron Appraisal Dist.*, 131 S.W.3d 285, 292 (Tex. App.—Corpus Christi 2004, *rev'd on other grounds*, 194 S.W.3d 501 (Tex. 2006) ("[T]he [exhaustion-of-remedies] doctrine has no application when there are pure questions of law involved. Further, the doctrine has no application where the legal question is one of whether a statute is constitutional: administrative agencies have no power to determine the constitutionality of statutes." (citations

8

omitted)). Here, Nariocan's core contentions are that the Commission's rule conflicts with federal law (PREP Act) and that the Commission's procedure violates constitutional due course of law. The Commission has no authority to declare its own rules invalid or to refuse to enforce a state requirement on the basis of federal preemption or constitutional inconsistency—only a court can grant that relief. Forcing Nariocan to slog through a futile administrative exercise would accomplish nothing except delay and prejudice. By the time the agency process finished, Nariocan's only recourse would still be to go to court to raise the preemption and constitutional issues. The law does not mandate such a pointless ritual. Accordingly, Nariocan was entitled to seek judicial intervention without further exhaustion.

### E. Federal law (PREP Act) preempts the Commission's actions, undermining the plea to the jurisdiction.

The Commission characterizes Nariocan's reliance on the PREP Act as "misguided" and argues that the PREP Act does not confer immunity in this context. This misses the point. Nariocan is not suing *under* the PREP Act or claiming the PREP Act as a source of subject-matter jurisdiction; rather, Nariocan invokes the PREP Act's preemptive force as part of its declaratory judgment claim on the merits. The presence of a significant federal-law issue, however, reinforces why the state court *does* have jurisdiction to hear this dispute: determining whether federal law preempts a state rule is a classic judicial

9

function, and nothing in Texas law shields an agency from court scrutiny when it is alleged to be acting contrary to supreme federal law. On the contrary, a state agency has no authority to enforce a rule that federal law forbids. *See* U.S. CONST. art. VI, cl. 2.

Substantively, the Commission's arguments against preemption are weak. It cites an HHS guidance document for the proposition that the PREP Act does not govern Medicaid reimbursement decisions. Even if we accept that, Nariocan is not claiming a right to reimbursement under the PREP Act—Nariocan's claim is that Texas cannot punish or sanction it for actions that were authorized by federal law during the COVID-19 pandemic. The PREP Act and the HHS Secretary's declarations under it were specifically designed to expand access to countermeasures like COVID tests by removing legal barriers. Under the PREP Act declaration in effect at the time, licensed pharmacists were authorized to order and administer COVID-19 tests, and any state law that "prohibits or effectively prohibits" them from doing so was preempted. CR:297. The Commission's rule requiring a doctor's prescription for test kits is exactly the sort of obstacle the federal declaration preempted. The Commission points out that PREP Act immunity does not apply to federal enforcement actions, which is true but irrelevant since this is about state enforcement. The Commission also notes that no tort claims are at issue here—again true, but Nariocan's preemption argument is not limited to the Act's immunity for tort liability; it invokes the

Act's express preemption clause and the intended sweep of the HHS declaration. Notably, while the Commission emphasizes what the PREP Act *does not* do, it conspicuously says nothing about the Act's express preemption of state-law requirements that frustrate the federal COVID-19 response. The silence is telling. If the Commission truly believed its prescription rule was not preempted, it would defend the rule on the merits rather than attempt to avoid the question on jurisdictional technicalities.

F.  **The January 2024 letter marked a sufficient final agency action (or at least a justiciable one).**

Finally, the Commission's portrayal of the January 30, 2024 preliminary-findings letter as a nothing-burger is unconvincing. The Commission highlights that the letter used the words "preliminary" and "potential," but form should not be elevated over substance. In substance, the letter is an official communication from the agency alleging specific rule violations and opening the door to sanctions. By the letter's issuance, the Commission had *already* completed a preliminary investigation and found reason to believe Nariocan violated Medicaid rules (10,576 instances, no less). The Commission does not send such letters lightly—they are the first step in the enforcement process. The letter itself triggers immediate obligations and consequences: it demands Nariocan's response within a deadline, and it effectively warns that if Nariocan cannot disprove the allegations, punitive action will follow. In administrative law terms,

11

this letter is akin to a notice of violation or a charging instrument. It may not be the final adjudication, but it fixes the agency's position and exposes Nariocan to serious sanctions.

The Commission's own citations prove the point. It quotes the letter's language about seeking Nariocan's "input and response" as if to show the agency has not made up its mind. But asking a target to respond to allegations is characteristic of an adversarial proceeding; it does not negate that the agency has preliminarily decided a rule was broken. Tellingly, the letter cites the very rule Nariocan allegedly violated and even quantifies the violations, strongly indicating that the Commission believes an infraction occurred (only the penalty might be in question). From Nariocan's perspective, the Commission's investigation has reached a stage where the accusation is concrete and the threat of sanction is imminent. That is more than enough to warrant judicial intervention. Here, the threatened injury (sanctions for purported violations) was plainly set in motion by the January 2024 letter, making preventive relief appropriate and necessary.

## II. The trial court abused its discretion by not permitting jurisdictional discovery.

In granting the Commission's motion to stay discovery, the trial court (1) absolved the Commission of having to respond to the written discovery Nariocan had already served; *and* (2) precluded Nariocan from seeking any additional discovery prior to the issuance of a ruling on the plea to the

jurisdiction. CR:52, 215. Nariocan was thus precluded from conducting jurisdictional discovery on matters such as the genesis and scope of the Commission's investigation, the interpretation of the rules at issue, and the factual basis of the Commission's determination that Nariocan acted unlawfully. These inquiries were directly relevant to disputed jurisdictional issues like ripeness and immunity (for example, evidence that the Commission had effectively decided Nariocan violated the rule, or that it failed to coordinate with federal authorities, would support Nariocan's ultra vires, ripeness, and preemption arguments).

The Commission defends the trial court's discovery stay by insisting that it "has made no determination whatsoever" about Nariocan and that its investigation is ongoing—in other words, the Commission argues there were no facts to discover. But that is not accurate. As discussed above, the Commission did make several determinations: it determined that Nariocan dispensed thousands of test kits without prescriptions; it determined that this conduct violated a Medicaid policy; and it effectively determined that such violation could warrant sanctions (hence the letter). If the Commission's position is that these were not "real" determinations, then discovery could have probed what, if anything, the agency has actually decided. The information learned from such discovery would answer whether Nariocan's alleged violation rests on an informal guideline, a formally promulgated rule, or simply a mistake—all facts

that go to the heart of jurisdiction (e.g., whether a "rule" is being applied and whether the agency is acting beyond authority). Similarly, if the Commission's assertion is that Nariocan has not been injured because no action has been taken, Nariocan was entitled to explore whether, in fact, any covert actions had been taken—such as placing a payment hold on Nariocan's reimbursements or flagging Nariocan in Medicaid databases. The Commission's brief hints at these procedures (noting that payment holds are heard at SOAH), but without discovery, Nariocan and the trial court had to accept or reject the Commission's self-serving claim that there is nothing yet to see. This one-sided fact presentation is exactly what limited discovery could have tested.

The Commission's cited authorities do not excuse the discovery freeze. The Commission notes that courts can limit or stay discovery pending resolution of threshold issues, and it cites cases like *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161-62 (Tex. 2004), for the proposition that a court need not allow discovery if it would not affect the jurisdictional question. But Nariocan was precluded for seeking any discovery that could have directly affected the jurisdictional issues. For example, if discovery had shown that the Commission's own files contained acknowledgments that federal law permits Nariocan's conduct, that would validate Nariocan's preemption theory and negate the Commission's immunity defense. Conversely, if discovery showed the Commission had not actually threatened any sanction, perhaps the trial court

would narrowly find the case unripe. But the point is that without discovery, the trial court was forced to speculate or accept one side's claims. Though the Texas Supreme Court has cautioned that a trial court must not "proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided," *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004), that decision is not legitimate if a party is denied the tools to establish the jurisdictional facts.

Accordingly, the Court should hold that the trial court abused its discretion when it preemptively slammed the door on all discovery, which thereby severely prejudiced Nariocan's ability to respond to the plea to the jurisdiction. If the Court has any doubt about the jurisdictional facts, the appropriate remedy is to remand for limited discovery and further proceedings. The Court should hold as much and ensure that Nariocan is afforded an opportunity to develop the facts needed to fully adjudicate its claims.

## III. Dismissing Nariocan's claims "with prejudice" was error.

The Commission's brief summarily asserts that the trial court "ruled correctly" in dismissing with prejudice, but it offers no substantive rationale for why a prejudice designation is appropriate here. Indeed, the Commission's own arguments undercut any such rationale. The Commission contends Nariocan's claims are not ripe *at this time* and that Nariocan must first exhaust administrative avenues. Those arguments, even if accepted, would only suggest that Nariocan's claims are premature—not that they are permanently barred. If a claim is unripe,

the proper course is to dismiss until it becomes ripe, at which point the plaintiff may refile. If a claim is dismissed for failure to exhaust, the plaintiff can pursue the administrative remedy and then return to court. A dismissal with prejudice in these scenarios is nonsensical because it would prevent the plaintiff from ever asserting the claim, even after it becomes ripe or after exhaustion. By labeling the dismissal "with prejudice," the trial court essentially punished Nariocan for filing early by forbidding it from ever bringing its claims—even after the very ripening event the Commission insists is necessary comes to pass (i.e., a final agency action). That outcome is unjust and incorrect as a matter of law—for the only conceivable justification for a with-prejudice dismissal on jurisdictional grounds is if the defect is absolutely incurable.

Therefore, to the extent this Court concludes that the Commission was entitled to a dismissal of Nariocan's claims, the Court should reform the judgment to reflect a dismissal without prejudice. *See* TEX. R. APP. P. 43.2(b) (appellate court may modify the trial court's judgment and affirm as modified). This will ensure that Nariocan is not permanently barred from vindicating its rights once jurisdictional prerequisites are satisfied. In no event should the "with prejudice" language be allowed to remain, as it was clear error.

## CONCLUSION & PRAYER

Nariocan acted heroically to serve public health needs during a crisis; it should not be met with a jurisdictional stonewall when it seeks to defend those

16

actions under the law. That said, Nariocan's suit is within the judiciary's power to decide and was improperly curtailed. Nariocan respectfully asks the Court to hold that the trial court erred in granting the plea to the jurisdiction and in denying Nariocan the discovery tools to establish its case. At a bare minimum, the dismissal of Nariocan's claims should be without prejudice so that fundamental justice is preserved.

Respectfully submitted,

/s/ *Ricardo Pumarejo Jr.*

Ricardo Pumarejo Jr.
State Bar No. 24056168
ricardo@pumarejolaw.com
PUMAREJO LAW
1606 W. 42nd Street
Austin, Texas 78756
p. 512.731.7869

Michael Pruneda
State Bar No. 24025601
michael@michaelpruneda.com
THE PRUNEDA LAW FIRM, PLLC
P.O. Box 1664
Pharr, Texas 78577
p. 956.702.9675

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, I hereby certify that this document contains 3,122 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for any footnotes which are in 12.5-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

/s/ *Ricardo Pumarejo Jr.*

Ricardo Pumarejo Jr.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ricardo Pumarejo on behalf of Ricardo Pumarejo
Bar No. 24056168
ricardo@pumarejolaw.com
Envelope ID: 101779622
Filing Code Description: Other Brief
Filing Description:
Status as of 6/9/2025 12:43 PM CST

Associated Case Party: Nariocan Enterprises LLC d/b/a Cantu's Pharmacy

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Miguel Pruneda | 24025601 | michael@michaelpruneda.com | 6/9/2025 12:35:55 PM | SENT |
| Ricardo Pumarejo | | ricardo@pumarejolaw.com | 6/9/2025 12:35:55 PM | SENT |

Associated Case Party: Texas Health and Human Services Commission

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Tiffani Collins | 24067550 | Tiffani.Collins@oag.texas.gov | 6/9/2025 12:35:55 PM | SENT |
| Sherlyn Harper | 24093176 | sherlyn.harper@oag.texas.gov | 6/9/2025 12:35:55 PM | SENT |
| Catherine Hughes | | catherine.hughes@oag.texas.gov | 6/9/2025 12:35:55 PM | SENT |