**Affirmed and Memorandum Opinion filed September 13, 2018**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00290-CV

## IN THE MATTER OF P.A.B. AKA P.J.A

**On Appeal from County Court at Law No. 2 & Probate Court
Brazoria County, Texas
Trial Court Cause No. JV22076**

## MEMORANDUM OPINION

This is an accelerated appeal from a juvenile court's order waiving jurisdiction and transferring appellant to district court. Tex. Fam. Code Ann. § 54.02 (West 2014). Appellant P.A.B. contends (1) the evidence is insufficient to support the order, and (2) the juvenile court abused its discretion in making the order. We affirm.

### BACKGROUND

In November 2017, three months before appellant turned 18, eight-year-old Amaya[1] made a disclosure of ongoing sexual abuse by appellant to her grandmother,

---

[1] We use pseudonyms to refer to minors and appellant's family members. Tex. R. App. P. 9.8(c)(2).

who reported the outcry to the police. Appellant was arrested, and his case was referred to the Brazoria County Juvenile Justice Department ("JJD") for its recommendation as to whether appellant should be tried as a juvenile or an adult for his offenses against Amaya. The JJD recommended appellant be certified as an adult for two reasons: (1) the seriousness of the offense, and (2) appellant's age.

Two weeks before appellant turned 18, the State petitioned the juvenile court to waive jurisdiction and transfer appellant to criminal district court. Tex. Fam. Code Ann. § 54.02(a). The petition alleged appellant committed two counts of aggravated sexual assault of a child (a first-degree felony) and one count of indecency with a child (a third-degree felony) when he was 16.[2]

### HEARING ON PETITION FOR WAIVER AND TRANSFER

The juvenile court conducted a hearing on the State's petition six weeks after appellant turned 18. *Id.* § 54.02(c). Four witnesses testified at the hearing: (1) Eric Morton, one of the detectives assigned to the investigation; (2) Michael Fuller, M.D., a psychiatrist who evaluated appellant; (3) Tiffany Jones, the JJD employee who recommended appellant be certified as an adult; and (4) Doris, appellant's half-sister. The State's petition, the police report, Dr. Fuller's report, Jones' predisposition report, appellant's school records, and letters from educators at appellant's school were admitted into evidence without objection.

***Detective Morton's testimony and the police report.*** Amaya and appellant are related by adoption. During the course of the investigation, Amaya said appellant had been coming into her bedroom for the last two years, where he would rub her buttocks while he masturbated and then ejaculate on her body. Appellant admitted doing so three times between the ages of 15 and 17, though he disputed some of

---

[2] Appellant was contemporaneously indicted in district court for one count of indecency with a child by exposure he allegedly committed when he was 17.

Amaya's account of his acts. Amaya also said appellant performed oral sex on her and asked her to perform oral sex on him, but she refused. The record does not indicate whether appellant admitted those allegations.

***Dr. Fuller's testimony and his report.*** Dr. Fuller is a psychiatrist and faculty member in the Department of Psychiatry at the University of Texas Medical Branch. The juvenile court appointed him to conduct a diagnostic evaluation of appellant. Appellant and the State stipulated Dr. Fuller was qualified to testify as an expert.

Dr. Fuller met with appellant and Doris separately. The doctor described appellant as cooperative, polite, and respectful. He believed appellant looked young for his age and noted his small stature. He administered three clinical instruments to appellant: (1) a clinical psychiatric interview, in which the clinician gathers information about the person's history and other relevant clinical information; (2) a mental status examination, designed to explore numerous domains of mental function; and (3) an instrument for competency examination, "designed specifically to assess function and knowledge areas that are essential to trial competency . . . ."

Appellant and/or Doris provided the following information to Dr. Fuller during the clinical psychiatric interview:

- Appellant's mother was not involved in his childhood. He was raised by his father until age six, at which point appellant moved in with a relative. Appellant entered foster care at age eight because the relative could no longer care for him.

- Appellant was exposed to sexual behavior from an early age. His father molested at least two daughters, sometimes in appellant's presence. When appellant was in foster care, he said, many kids talked and acted sexually inappropriately.

- Eighteen years old when he met Dr. Fuller, appellant was in 11th grade in a credit-recovery program to make up for school time he lost during foster care.

- Appellant was previously diagnosed with attention deficit hyperactivity disorder (ADHD). He took prescribed medication for about three years, but he had

discontinued the medication roughly two years earlier. He and Doris both believed the medication helped him.

- Other than ADHD, appellant has no known medical or psychological problems.

Appellant's mental status examination was largely unremarkable. His appearance, alertness, physical movement, eye contact, non-verbal communication, affect, thought processes, thought content, mood, cognitive function, attention, concentration, memory, judgment, and capacity for abstract reasoning were all normal. Dr. Fuller believed appellant to be of below-average to average intelligence, based on his vocabulary, sentence structure, and other indicators. As to appellant's insight, Dr. Fuller wrote:

> [Appellant] demonstrated significant and appropriate insight into the seriousness of the charges against him. He claims remorse and regret for the activities that led to these charges.

Dr. Fuller considered the following areas of trial knowledge: (1) rational understanding of the charges and possible penalties; (2) capacity to understand the adversarial nature of the legal process; (3) capacity to disclose relevant facts to the person's lawyer and work with the lawyer to plan a defense; (4) capacity to engage in a reasoned choice of legal strategies and options; (5) capacity to testify relevantly; and (6) ability to behave appropriately in court. He said appellant was able to state the charges against him and share his version of the events leading to those charges. Appellant understood the difference between a felony and a misdemeanor. He knew he might be tried in adult court and sentenced to time in prison. Appellant verbalized the role of the judge, jury, district attorney, and defense attorney. He was familiar with guilty and not-guilty pleas. Appellant expressed willingness to work with his lawyer and said he and his lawyer communicated well. He also said he intended to consider his lawyer's advice before agreeing to any resolution of the charges against him. Dr. Fuller said appellant "relate[d] his perspective on the events in question in

4

a thoughtful, rational, and goal directed way." For that reason, Dr. Fuller believed appellant could testify rationally. Finally, Dr. Fuller noted appellant understood courtroom decorum and could conduct himself appropriately.

Dr. Fuller concluded his report as follows:

> [Appellant] may have a low IQ and is currently behind in his education but appears to be able to communicate and interact well. He seems to have been exposed to inappropriate sexual behavior as a child by his father and during his stay in foster care. He had a very chaotic life growing up with poor role models. His half-sister . . . stated that she believes at the time of the incident he may not have fully understood the seriousness of his actions due to his life experience and immaturity. However, since the arrest and some educating by the half-sister, she believes he now understands what has happened was wrong. He is [a] relatively immature adolescent who could be certified for trial as an adult given his age and the serious nature of the behaviors that he is accused of. He appears to satisfy the criteria for fitness to proceed or competent to stand trial.

***Jones' testimony and her report.*** Jones believed the serious nature of the offenses of which appellant is accused requires rehabilitative services. The JJD offers such services only until a person's 18th birthday. Because appellant turned 18 before the transfer hearing, no JJD services would be available to him if the juvenile court declined to waive jurisdiction. Jones concluded the JJD cannot adequately serve appellant's and the public's needs. She also noted appellant was already facing a charge as an adult in criminal district court, which she believed supported waiver of jurisdiction in this case.

On cross-examination, Jones acknowledged the JJD could provide rehabilitative services to appellant if the State petitioned for determinate sentencing in the juvenile court rather than waiver of the juvenile court's jurisdiction.

***Doris' testimony.*** Considerably older than appellant, Doris, his paternal half-sister, had not seen appellant for 10 years when he moved in with her and her family

5

following his arrest. She testified appellant was doing well in her home. He was catching up at school and expected to graduate in several months. Still, she said, he struck her as somewhat immature compared to herself at his age. Doris told Dr. Fuller appellant frequently needed redirection and repetition at home, which Dr. Fuller testified is common for people with ADHD.

Six teachers and other school personnel wrote letters attesting to appellant's good character. Those letters were admitted into evidence without objection. Excerpts from the letters include:

- "My impression of [appellant] is that he is a cooperative student who attends class daily and does not present any discipline issues for teachers or administrators."

- "[Appellant's] attendance has been excellent and he is focused on earning his credits and graduating high school. He gets along well with other students and has had no discipline referrals and no [in-school suspensions]."

- "The courses are rigorous and at many times self-paced. Many students have difficulty maintaining class assignments and averages due to the demanding nature of our campus. [Appellant], however, . . . is doing an excellent job of completing and turning in material on time. . . . Our campus is geared toward students like [appellant] who are behind and need acceleration. He is taking advantage of the opportunity he has to successfully complete his classes and reach his goals."

Since moving in with Doris, appellant had been attending counseling and working with a doctor to treat his ADHD. Doris said she did not know what appellant and his counselor discussed; due to his age, she was not permitted to observe the counseling sessions. She noted he had not seen his counselor for roughly a month due to conflicts between appellant's and the counselor's schedules. Doris described appellant as quiet, remarking he got along well with her 22-year-old son but did not interact much with the rest of the family.

The juvenile court signed a five-page order ("Transfer Order") detailing its findings and bases for granting the State's petition to waive jurisdiction and transfer appellant to criminal district court. The court expressly found the State exercised due diligence to file its petition and prosecute the case, given that appellant was three months shy of 18 when the alleged abuse was reported to police, the district attorney received the police report two months before appellant turned 18, and the JJD made its recommendation two weeks before appellant's 18th birthday.

The juvenile court then made findings about appellant and his alleged offenses. For ease of reading, we have grouped the findings by topic.

### Facts and nature of the alleged offenses

- Appellant allegedly committed felonies against a person.

- Amaya was five years old when the alleged offenses began and seven or eight years old when they stopped.

- Appellant was 15 to 17 years old when he allegedly committed the offenses.

- Appellant is Amaya's uncle.

- Amaya disclosed appellant put his sexual organ on her sexual organ.

- Amaya also disclosed appellant put his mouth on her sexual organ and attempted to get her to put her mouth on his sexual organ, but she refused.

- Appellant admitted to masturbating while he rubbed Amaya's buttock.

- There is probable cause to believe appellant committed the alleged offenses.

### Appellant's familial, social, and educational history

- Appellant said he was abused by his biological parents and removed from his home.

- Appellant has been adopted.

- Appellant is currently in school and gets along well with the teachers. He is not in special education classes.

### *Appellant's physical and mental health*

- Appellant denied mental health issues or major health issues.

- Dr. Fuller conducted a diagnostic study on appellant and found as follows:

  - Appellant's speech and thought processes were logical, coherent, goal directed, and devoid of the stigmata of persistent psychosis.

  - Appellant showed no signs of "perseveration or flight of ideas."

  - Appellant can concentrate appropriately and engage well.

  - Appellant denied auditory and visual hallucinations and showed no signs of delusions.

  - Appellant did not appear homicidal or suicidal.

  - Appellant appears to be of below-average to average intelligence.

  - Appellant displayed average ability to concentrate on a task and good short term memory.

  - Appellant showed no marked impairment in his ability to make or use sound judgment.

  - Appellant manifested an ability to interpret abstract thoughts, which is beneficial to rule out the vulnerability of the effects of organic medical conditions and also to show impairment in certain psychotic states.

### *Appellant's sophistication and maturity*

- Dr. Fuller noted the following about appellant's ability to aid in his own defense:

  - Appellant demonstrated significant and appropriate insight into the seriousness of the charges against him.

  - Appellant can provide a full, detailed account of the events and assist his lawyer with his defense.

  - Appellant understands the difference in consequences he faces if convicted.

He understands he can be tried as an adult and go to prison.

- o Appellant understands the court system, adversarial system, and concept of plea bargaining.

- o Appellant can communicate and interact well with his attorney and others.

- Appellant is of sufficient sophistication and maturity to be tried as an adult and to aid an attorney in his defense.

*Prospect of protection of the public and rehabilitation of appellant*

- "[B]ecause of the records and previous history of [appellant] and because of the extreme and severe nature of the alleged offense(s), the prospects of adequate protection for the public and the likelihood of reasonable rehabilitation of [appellant] by the use of the procedures, services and facilities which are currently available to the Juvenile Court are in doubt."

- Many of the facilities normally available to the court are not available because appellant is 18 years old.

- Because of the seriousness of the alleged offenses and appellant's background, the welfare of the community requires criminal proceedings.

The preceding findings are computer-printed on the Transfer Order. The juvenile court also handwrote the following:

> Juvenile is 18. No effective plan for his rehabilitation in the juvenile system exists due to his age [and] offenses alleged. Due to the history of the juvenile [and] his family, intensive treatment not available in the juvenile system, for the length of time required, is necessary.

> The juvenile court concluded:

> The Court, after considering all of the testimony, diagnostic study, social evaluation, and full investigation of [appellant], his circumstances, and the circumstances of the alleged offense(s), finds that it is contrary to the best interest of the public for the juvenile court to retain jurisdiction.

The court granted the State's petition and waived jurisdiction.

9

On appeal, appellant contends (1) the evidence is legally and factually insufficient to support the Transfer Order, and (2) the juvenile court abused its discretion by finding the welfare of the community requires appellant to be tried as an adult.

## I.    Legal Standards

### A.    Juvenile jurisdiction

Texas juvenile courts have exclusive, original jurisdiction over cases involving what otherwise would be criminal conduct by children 10 years of age or older but younger than 17 years of age. Tex. Fam. Code Ann. §§ 51.02(2)(a), 51.03(a)(1), 51.04(a) (West 2014 & Supp. 2017). Further, the juvenile court retains jurisdiction after the child turns 18 or 19, as applicable, in certain situations:

> The court retains jurisdiction over a person, without regard to the age of the person, who is a respondent in an adjudication proceeding, a disposition proceeding, a proceeding to modify disposition, a proceeding for waiver of jurisdiction and transfer to criminal court under Section 54.02(a), or a motion for transfer of determinate sentence probation to an appropriate district court if:
>
> (1) the petition or motion was filed while the respondent was younger than 18 or 19 years of age, as applicable;
>
> (2) the proceeding is not complete before the respondent becomes 18 or 19 years of age, as applicable; and
>
> (3) the court enters a finding in the proceeding that the prosecuting attorney exercised due diligence in an attempt to complete the proceeding before the respondent became 18 or 19 years of age, as applicable.

*Id*. § 51.0412 (West 2014). Section 51.0412 is the basis for juvenile jurisdiction in this case, where the State petitioned to waive jurisdiction when appellant was 17 but

the court heard the petition and signed the Transfer Order when he was 18.

## B.      Standards for waiver of juvenile jurisdiction

If a juvenile court determines after an evidentiary hearing that certain requirements are satisfied, it may waive its jurisdiction and transfer a child to the district court for criminal proceedings. *Id.* § 54.02(a), (c). The State has the burden to persuade the juvenile court by a preponderance of the evidence that "the welfare of the community requires transfer of jurisdiction for criminal proceedings, either because of the seriousness of the offense or the background of the child (or both)." *Moon v. State*, 451 S.W.3d 28, 40–41 (Tex. Crim. App. 2014); *accord Taylor v. State*, No. 14-16-00583-CR, __ S.W.3d __, 2018 WL 2306740, at *3 (Tex. App.— Houston [14th Dist.] May 22, 2018, no pet. h.) (op. on reh'g).

The Texas Court of Criminal Appeals wrote in *Moon*:

> The transfer of a juvenile offender from juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be "protected and rehabilitated rather than subjected to the harshness of the criminal system." Because the waiver of juvenile-court jurisdiction means the loss of that protected status, in *Kent v. United States*, the United States Supreme Court characterized the statutory transfer proceedings . . . as "critically important," and held that any statutory mechanism for waiving juvenile-court jurisdiction must at least "measure up to the essentials of due process and fair treatment."

451 S.W.3d at 36 (quoting *Kent v. United States*, 383 U.S. 541, 560–62 (1966)).

The statutory requirements for waiver of jurisdiction and transfer are:

(1) the child is alleged to have [committed a] felony;

(2) the child was:

(A) 14 years of age or older at the time he is alleged to have

11

committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

(B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

Tex. Fam. Code Ann. § 54.02(a).

In making this determination, the juvenile court must consider, among other matters, the following factors:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f). Any combination of these criteria may suffice to support a waiver of jurisdiction; not every criterion need weigh in favor of transfer. *Moon*, 451 S.W.3d at 47 & n.78. "The trial court is bound only to consider these . . . factors in deciding whether to waive jurisdiction. The court need not find that each factor is established by the evidence." *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (quoting *In re D.L.N.*, 930 S.W.2d 253, 258 (Tex. App.—

12

Houston [14th Dist.] 1996, no writ)).

If the juvenile court waives its jurisdiction, it is required to "state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court . . . ." Tex. Fam. Code Ann. § 54.02(h). Section 54.02(h) requires the juvenile court to include its reasons for waiver and specific findings of fact that undergird those reasons in its transfer order:

> In this way the Legislature has required that, in order to justify the broad discretion invested in the juvenile court, that court should take pains to "show its work," as it were, by spreading its deliberative process on the record, thereby providing a sure-footed and definite basis from which an appellate court can determine that its decision was in fact appropriately guided by the statutory criteria, principled, and reasonable . . . .

*Moon*, 451 S.W.3d at 49.

## C. Appellate review

Our review of a transfer order is two-pronged. First, we review the juvenile court's specific findings of fact concerning the section 54.02(f) factors under a "traditional sufficiency of the evidence review." *Id.* at 47. Under a legal sufficiency challenge, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable fact finder could not reject the evidence. *C.M.M.*, 503 S.W.3d at 701. If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Id.* Under a factual sufficiency challenge, we consider all the evidence presented to determine if the court's findings are against the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Id.*

Second, we review the waiver decision for an abuse of discretion. *Moon*, 451 S.W.3d at 47. That is, in reviewing the juvenile court's conclusion that the

seriousness of the offense alleged and/or the background of the juvenile calls for criminal proceedings for the welfare of the community, we ask, in light of our own analysis of the sufficiency of the evidence to support the section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. *Id.* A juvenile court abuses its discretion when its decision to transfer is essentially arbitrary, given the evidence upon which it was based. *Id.* By contrast, a waiver decision representing "a reasonably principled application of the legislative criteria" generally will pass muster under this standard of review. *Id.* at 49. "[A] juvenile court that shows its work should rarely be reversed." *Id.*

## II. Application

We begin with what is not in dispute. Appellant does not challenge the juvenile court's finding that the State exercised due diligence to file its petition and "complete the case." Tex. Fam. Code Ann. § 51.0412(3) (juvenile court retains jurisdiction if, among other things, "the court enters a finding in the proceeding that the prosecuting attorney exercised due diligence in an attempt to complete the proceeding" before the juvenile turned 18). Nor does appellant challenge the juvenile court's findings that: the alleged offenses are felonies (*id.* § 54.02(a)(1)); appellant was 16 at the time of the alleged offenses and no adjudication hearings have been conducted regarding those offenses (*id.* § 54.02(a)(2)(A), (B)); probable cause exists to believe appellant committed the alleged offenses (*id.* § 54.02(a)(3)); and the alleged offenses were against a person (*id.* § 54.02(f)(1)).

We turn to the findings in dispute. First, appellant makes three challenges to the evidentiary sufficiency of the juvenile court's findings. He contends:

- the evidence is factually insufficient to support the juvenile court's finding that appellant is of sufficient sophistication and maturity to be tried as an adult;

- the evidence is legally and factually insufficient to support the juvenile court's finding that appellant's record and history warranted transfer; and

- the evidence is legally and factually insufficient to support the juvenile court's finding that the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by the use of procedures, services, and facilities currently available to the juvenile court warranted transfer.

Second, appellant asserts the juvenile court abused its discretion in finding the welfare of the community requires him to be tried as an adult.

## A. Evidentiary sufficiency

### 1. Sophistication and maturity

Dr. Fuller believed appellant can aid in his own defense. The doctor noted appellant can communicate well with his attorney and understands the nature and gravity of the charges against him, the possible consequences of conviction, the adversarial system, and the concept of plea bargaining. Appellant does not challenge these findings on appeal. Instead, he asserts the sophistication-and-maturity factor is broader than one's competence to aid in his own defense.

> The Court of Criminal Appeals appears to agree with appellant:
>
> [I]t is doubtful that the Legislature meant for the sophistication-and-maturity factor to embrace the juvenile's ability to waive his constitutional rights and assist in his defense. It is true that a great many of the courts of appeals seem to think that it does. . . . No case has ever undertaken to explain, however, exactly how the juvenile's capacity (or lack thereof) to waive his constitutional rights and assist in his defense is relevant to whether the welfare of the community requires transfer, and we fail to see that it is. Other courts of appeals have rightly declared "the purpose of an inquiry into the mental ability and maturity of the juvenile [to be] to determine whether he appreciates the nature and effect of his voluntary actions and whether they were right or wrong."

*Moon*, 451 S.W.3d at 50 n.87 (citations omitted). The court described proxying a juvenile's "capacity to waive his constitutional rights" for his sophistication and

maturity as "misguided." *Id.*

As evidence of his unsophistication and immaturity, appellant points to his average to below-average intelligence and Dr. Fuller's testimony about his diminished functioning:

> [Appellant's] overall functioning is less – is globally diminished compared to the average 18-year-old. His decisional ability, his ability to integrate complex data, his social maturity are all diminished. It would be difficult for me to attach a number or an age to it, but he's generally relatively juvenile for an 18-year-old.

Appellant also cites his statement to the police in which he said he would masturbate "until white stuff came out," implying his non-use of the terms ejaculate or ejaculation is evidence of his lack of sophistication and maturity.

However, other evidence supports the juvenile court's finding regarding appellant's sophistication and maturity. First, six educators from appellant's school wrote letters implying he is well-behaved, focused, motivated, and thriving in a demanding educational environment. Second, Dr. Fuller wrote in his report that appellant "demonstrated significant and appropriate insight into the seriousness of the charges against him" and "claims remorse and regret for the activities that led to these charges." The doctor's statement is evidence appellant understands his alleged actions were wrong, a fact the Court of Criminal Appeals endorsed as key in the sophistication-and-maturity analysis. *See Moon*, 451 S.W.3d at 50 n.87.

After considering all the evidence, we cannot say the juvenile court's finding as to appellant's sophistication and maturity is so against the great weight and preponderance of the evidence so as to be clearly wrong or unjust. We overrule appellant's contention that the evidence is factually insufficient under section 54.02(f)(2).

## 2. Record and history

There is no evidence appellant has a history of criminal activity, much less an adjudication or conviction. To the contrary, Jones testified appellant has no JJD record. The State appears to concede the lack of such evidence; it states in its brief that, "[W]hen considering [the record-and-history] factor, the juvenile court appears to have rolled it into its consideration of the fourth factor – adequate protection of the public and likelihood of rehabilitation." We sustain appellant's contention that the evidence is legally and factually insufficient under section 54.02(f)(3).

## 3. Protection of the public and rehabilitation of appellant

Jones believed appellant cannot be adequately rehabilitated by the JJD. The serious nature of his alleged offenses warrants counseling and other rehabilitative services for appellant. However, as a general rule, the JJD may not offer those services to a person who is 18 or older. The exception is if the juvenile court retains jurisdiction and sentences the person to a determinate sentence.

On appeal, appellant challenges the wisdom of the law that allows the prosecutor sole discretion to decide whether to pursue determinate sentencing. *See* Tex. Fam. Code Ann. § 53.045 (West 2014 & Supp. 2017). His arguments are for the Legislature, not this court. *See City of Laredo v. Laredo Merchants Ass'n*, 550 S.W.3d 586, 589–90 (Tex. 2018) ("'The wisdom or expediency of the law is the Legislature's prerogative, not ours.'") (quoting *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968)); *Vandyke v. State*, 538 S.W.3d 561, 569 (Tex. Crim. App. 2017) ("We are not empowered to substitute what we believe is right or fair for what the Legislature has written, even if the statute seems unwise or unfair.").

We conclude more than a scintilla of evidence supports the juvenile court's finding under section 54.02(f)(4) that "the likelihood of reasonable rehabilitation of [appellant] by the use of the procedures, services and facilities which are currently

available to the Juvenile Court [is] in doubt." Further, that finding is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. We overrule appellant's contention that the evidence is legally and factually insufficient under section 54.02(f)(4).

## B. No abuse of discretion

For the second part of our appellate review, we ask, in light of our own analysis of the sufficiency of the evidence to support the section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles in waiving jurisdiction. *Moon*, 451 S.W.3d at 47.

The juvenile court heard testimony from the psychiatrist who evaluated appellant, one of the detectives who investigated the alleged offenses, the JJD employee who analyzed appellant's case and recommended he be certified as an adult, and appellant's half-sister. The court also received written reports from the first three of those witnesses, appellant's school records, and six letters from educators familiar with appellant. That evidence addressed nearly every factor in the statutory framework the juvenile court is tasked to consider. With the exception of the findings regarding appellant's record and history, all the juvenile court's findings are supported by legally and factually sufficient evidence.

Despite the lack of evidence to support the record-and-history findings under section 54.02(f)(3), we cannot say the juvenile court's decision to waive jurisdiction was "essentially arbitrary, given the evidence upon which it was based." *Id.* Instead, the Transfer Order reflects "a reasonably principled application of the legislative criteria." *Id.* at 49. We conclude the juvenile court did not abuse its discretion in waiving jurisdiction and transferring appellant to criminal district court.

## CONCLUSION

We affirm the Transfer Order.

/s/ Ken Wise
Justice

Panel consists of Justices Jamison, Wise, and Jewell.