**Opinion issued November 18, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00071-CV

———————————

**TITLEMAX OF TEXAS, INC., Appellant**

**V.**

**CITY OF AUSTIN AND RONDELLA HAWKINS, OFFICER, CITY OF AUSTIN OFFICE OF TELECOMMUNICATIONS AND REGULATORY AFFAIRS, IN HER OFFICIAL AND INDIVIDUAL CAPACITY, Appellees**

**On Appeal from the 353rd District Court[1]**
**Travis County, Texas**
**Trial Court Case No. D-1-GN-19-002613**

---

[1]     The Texas Supreme Court transferred this appeal from the Third Court of Appeals to this Court pursuant to its docket equalization powers. *See* TEX. GOV'T CODE § 73.001.

**O P I N I O N**

Appellant, TitleMax of Texas, Inc. ["TitleMax"], sought declaratory and injunctive relief against appellee, the City of Austin ["the City"], relating to a city ordinance intended to regulate payday lending practices. The City filed a plea to the jurisdiction, asserting that, because the specific ordinance at issue was penal in nature, the civil district court lacked jurisdiction to declare it unconstitutional or to enjoin a prosecution filed thereunder. The trial court granted the City's plea to the jurisdiction and dismissed TitleMax's case. This appeal followed. We reverse and remand.

## BACKGROUND

Before considering TitleMax's issues on appeal, it is necessary to review the ordinance at issue and documents filed in the case.

### *The Ordinances*

The City of Austin has payday lending ordinances ("the Ordinances"), first enacted in 2011 and amended in 2015, which regulate credit access businesses such as TitleMax. The Ordinances provides as follows:

> A credit services organization or credit access business that obtains for a consumer or advises or assists a consumer in obtaining an extension of consumer credit shall by the terms of the extension of consumer credit transaction:
>
> > (1) require payment of the total amount of the extension of consumer credit transaction, including any principal, interest,

fees, valuable consideration, credit access business fees, and any other charges or costs, in four or fewer payments; and

(2) reduce by at least 25 percent per payment the total amount of the extension of consumer credit transaction, including any principal, interest, fees, valuable consideration, credit access business fees, and any other charges or costs.

Austin, Tex. Code § 4-12-22(D). The Ordinances further provide in relevant part:

(A) A person who violates any section of this chapter commits a Class C misdemeanor punishable by a fine not to exceed $500.

(B) Except as provided in Subsection (C), each day that a violation occurs is a separate offense.

(C) Each extension of consumer credit transaction is a separate offense if the extension of consumer credit transaction violates:

(1) Section 4-12-22 (Restrictions on Extensions of Consumer Credit Transactions)[.]
. . . .
(D) The penalties provided for in Subsection (A) are in addition to any other remedies available under City ordinance or state law.

(E) . . . [A] culpable mental state is not required for a violation of this chapter and need not be proved.

Austin, Tex. Code § 4-12-26.

In February 2019, the City audited two TitleMax stores in Austin for compliance and concluded that two loans (Loan No. 22289-148-35407272 and Loan No. 21189-1678-35508202) were made in violation of the above-referenced Ordinances.

3

*Petition for Declaratory Relief and Application for Permanent Injunction*

On May 10, 2019, TitleMax filed suit against the City, seeking a declaration that (1) the Ordinances do not apply to TitleMax's activities, (2) section 4-12-22(D) of the Ordinances is preempted by section 393.062(b) of the Texas Finance Code, (3) section 4-12-26 is preempted by section 393.224 of the Texas Finance Code and § 6.02 of the Texas Penal Code, and (4) the Ordinances are unconstitutionally void for vagueness and excessive fines. TitleMax's petition also sought to permanently enjoin the City "from any attempts to seek criminal enforcement of the Ordinance and City Code Provisions against Plaintiff."

*The City files Criminal Complaints Against TitleMax*

On May 30, 2019, after TitleMax had filed its petition, the City filed two criminal complaints against TitleMax in Travis County Municipal Court, alleging that the two loans that it had previously identified during its February 2019 audit violated the section 4-12-22(D) by exceeding the number of installments permitted for such loans.

*The Amended Petitions*

On July 12, 2019, TitleMax filed its First Amended Petition, which added a cause of action seeking a temporary injunction to "prohibit[] the City from any attempts to seek criminal enforcement of the Ordinance and City Code Provisions against Plaintiff pending trial of this matter."

4

On September 10, 2019, TitleMax filed its Second Amended Petition, which added claims against Anne Morgan, Austin's City Attorney, and Rondella Hawkins, of the City's Office of Telecommunications and Regulatory Affairs.[2]

***Pleas to the Jurisdiction***

On September 20, 2019, the City filed a Plea to the Jurisdiction, alleging that, because the Ordinances are penal in nature, a civil equity court has no jurisdiction to declare them invalid or to enjoin a prosecution arising therefrom unless "(1) there is evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened; or (2) the enforcement of an unconstitutional statute threatens irreparable injury to vested property rights."

On September 30, 2019, Hawkins also filed a Plea to the Jurisdiction, alleging that she acted "well within her discretion in enforcing the Ordinance against Plaintiff, which defeats Plaintiff's ultra vires allegation against her and deprives [the trial court] of subject-matter jurisdiction."

Both the City and Hawkins requested that the claims against them be dismissed; the City further requested that "because Plaintiff cannot cure the

---

[2]     All claims against Morgan, the City Attorney, have been nonsuited and are not a part of this appeal.

[jurisdictional] defect through amendment, the City asks that [TitleMax's live pleading] be dismissed without leave to amend."

### *The Trial Court's Ruling*

After a two-day hearing, the trial court, on November 27, 2019, signed an Order Granting Pleas to the Jurisdiction, stating as follows:

> Defendant City of Austin's Plea to the Jurisdiction is GRANTED. The City has initiated two Municipal Court prosecutions. Plaintiff may argue that the underlying ordinance is unconstitutional in the criminal proceedings. The Court also notes that plaintiff is not a small local business.

> Defendants Anne Morgan's and Rondella Hawkins's First Amendment Pleas to the Jurisdiction is [sic] GRANTED. Defendant Morgan is protected by absolute immunity. As discussed above, this Court has no jurisdiction to determine the meaning and validity of this penal ordinance on this procedural record. This Court should not, therefore, exercise jurisdiction to determine the scope of Defendant Hawkins' authority under the ordinance and whether she acted outside the bounds of her granted authority.

> This is a final order disposing of all claims and all parties and is appealable.

### *Findings of Fact and Conclusions of Law*

Upon TitleMax's request, the trial court made the following findings of fact, which are relevant to this appeal:

> TitleMax of Texas, Inc. is not a small, local business. It is part of the TMX Finance Family of Companies, which collectively do business in at least 16 different states. TitleMax has nearly 275 locations across Texas, including nine locations in Austin.

The City of Austin audited two TitleMax stores in February 2019 for compliance with the Ordinance. Two loans were referred for prosecution: Loan No. 2289-1948-3540272 ("7272 loan") and Loan No. 21189-1678-35508202 ("8202 Loan"). These prosecutions are currently pending in Municipal Court.

TitleMax has not shown that it is currently facing a threat of irreparable injury to vested property rights, or that such a threat is reasonably foreseeable.

The Supreme Court of Texas found a threat of irreparable injury to vested property rights when an ordinance "imposes a substantial per violation fine that effectively precludes small local businesses from testing the ban's constitutionality in defense to a criminal prosecution." *City of Laredo v. Laredo Merchants Association*, 550 S.W.3d 586, 592 fn. 28 (Tex. 2018). While the Ordinance here arguably could impose substantial fines, TitleMax is not a small local business that is effectively precluded from testing the Ordinance's constitutionality in defense to a criminal prosecution.

The trial court also made the following conclusions of law:

The Ordinance is a penal ordinance.

Civil courts have jurisdiction to enjoin or declare void an unconstitutional penal ordinance when there is a threat of irreparable injury to vested property rights.

Because there is no jurisdiction for the Court to hear TitleMax's claims against the City, the Court declines to exercise jurisdiction to determine TitleMax's ultra vires claims against Rondella Hawkins.

TitleMax timely appealed the trial court's granting of the City's and

Hawkins's pleas to the jurisdiction and judgment dismissing its claims against both.

# PROPRIETY OF ORDER GRANTING PLEAS TO THE JURISDICTION

In its sole issue on appeal, TitleMax contends that "[t]he district court erred in granting the City's and Hawkins's pleas to the jurisdiction." Specifically, TitleMax argues that, "[t]hrough the guise of a preempted and unconstitutional Ordinance, the City seeks to regulate TitleMax and similarly situated businesses despite licensing requirements and comprehensive statutory and regulatory requirements already imposed by the State of Texas" and that, because TitleMax has shown a threat of irreparable injury to vested property rights, the civil district court has jurisdiction to enjoin or declare void the Ordinance at issue in this case.

## *Standard of Review*

Subject-matter jurisdiction is essential to a court's power to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The plaintiff bears the burden of affirmatively demonstrating that the trial court has subject-matter jurisdiction over its case. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Villarreal v. Harris Cty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We review a trial court's ruling on a plea to the jurisdiction de novo. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political*

*Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006); *City of Houston v. Vallejo*, 371 S.W.3d 499, 501 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A defendant may use a plea to the jurisdiction to challenge whether the plaintiff has met its burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

When a plea to the jurisdiction challenges the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* at 226. We construe the pleadings liberally in favor of the pleader, accept all factual allegations as true, and look to the pleader's intent. *Heckman*, 369 S.W.3d at 150. If the pleadings are insufficient, the court should afford an opportunity to replead if the defects are potentially curable but may dismiss if the pleadings affirmatively negate the existence of jurisdiction. *City of Houston v. Guthrie*, 332 S.W.3d 578, 586–87 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Review of a plea challenging the existence of jurisdictional facts mirrors that of a matter-of-law summary-judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228 ("[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). . . . By requiring the [S]tate to meet the summary judgment

standard of proof . . . , we protect the plaintiff[ ] from having to put on [its] case simply to establish jurisdiction.") (internal quotations and citations omitted); *see also* TEX. R. CIV. P. 166a(c). "[A] court deciding a plea to the jurisdiction . . . may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). And a court may consider evidence as necessary to resolve a dispute over the jurisdictional facts even if the evidence "implicates both the subject[-]matter jurisdiction of the court and the merits of the case." *Miranda*, 133 S.W.3d at 226.

We take as true all evidence favorable to the non-movant and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* at 228. If the defendant meets its burden to establish that the trial court lacks jurisdiction, the plaintiff is then required to show that there is a material fact question regarding the jurisdictional issue. *Id.* at 227–28. If the evidence raises a fact issue about jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. *Id.* On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228; *Garcia*, 372 S.W.3d at 635.

### Cases Predating Texas Propane Gas Association v. City of Houston

Both parties agree that the issue in this case—whether the civil district court has subject-matter jurisdiction to interpret or enjoin the City's Ordinances—is

governed by the recent Texas Supreme Court decision in *Texas Propane Gas Association v. The City of Houston*, 622 S.W.3d 791 (Tex. 2021). However, the parties disagree with how the holding in *Texas Propane* should be applied in the current case. Before analyzing *Texas Propane*, it is appropriate to discuss several cases predating it on which the supreme court relied or distinguished in reaching its decision.

In *City of Austin v. Austin City Cemetery Association*, the cemetery association challenged a city ordinance prohibiting burials within certain geographic limits of the City of Austin. 28 S.W. 528 (Tex. 1894). The supreme court acknowledged that, "as a general rule, the aid of a court of equity cannot be invoked to enjoin criminal prosecutions" and that "anyone prosecuted under its provisions may have it [] declared [void], either in the original criminal action, or by suing out a writ of habeas corpus." *Id.* at 336. But, the court noted that "[a] criminal prosecution is unpleasant to all people who have due respect for the law, and almost necessarily involves inconvenience and expense." *Id.* The very existence of the statute, as long as it remains undisturbed, "acts in terrorem, and practically accomplishes" its goal. *Id.* at 336–37. The court noted that no one would be willing to purchase a cemetery plot for fear that it could not be used for its intended purpose without violating the ordinance, thus "result[ing] in a total destruction of the value of [the cemetery association's property] for the purpose for which it was acquired."

*Id.* at 336. Given the threat that a business in the locality might be "effectually destroyed" by the ordinance, the court concluded that the business "should have the right to . . . enjoin its enforcement." *Id*. at 337.

In *State v. Morales*, the trial court found the State's sodomy statute unconstitutional and enjoined its enforcement. 869 S.W.2d 941, 942 (Tex. 1994). The State appealed, arguing "that civil courts under these circumstances have no power to grant either injunctive or declaratory relief based on the unconstitutionality of a criminal statute." *Id.* at 943. The court agreed, noting that when a criminal statute is enforced and the charged party is being prosecuted or the threat of prosecution is imminent, the constitutionality of the criminal statute should be determined by courts exercising criminal jurisdiction "unless the statute is unconstitutional and there is the threat of irreparable injury to vested property rights." *Id.* at 945. However, if there is no actual or threatened enforcement of the penal statute and no complaint of specific conduct remediable by injunction, "[a] civil court simply has no jurisdiction to render naked declarations of 'rights, status or other legal relationships arising under a penal statute.'" *Id.* at 947 (citing *Malone v. City of Hous.*, 278 S.W.2d 204, 206 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e.)). Because no property rights were involved, and there was no prosecution or threatened prosecution, the supreme court held that the civil district court had no

12

jurisdiction to declare the sodomy statute unconstitutional or to enjoin its enforcement. *Id.* at 947.

Finally, in *City of Laredo v. Laredo Merchants Association*, a merchants association sued the city seeking a declaration that an ordinance prohibiting the use of plastic or paper "checkout bags" was unconstitutional and enjoining its enforcement. 550 S.W.3d 586, 591 (Tex. 2018). The City of Houston, as amicus curiae, argued that the civil court lacked jurisdiction because the ordinance was penal in nature, not civil, and could only be challenged as a defense to a criminal prosecution for violating it. *Id.* at 592 n.28. The supreme court disagreed, noting that "civil courts have jurisdiction to enjoy or declare void an unconstitutional penal ordinance when 'there is the threat of irreparable injury to vested property rights.'" *Id.* (quoting *Morales*, 869 S.W.2d at 945). The supreme court held that this "rule applies here, where the ordinance prohibits the complaining vendors from using noncompliant bags and, if they do, imposes a substantial per-violation fine that effectively precludes small local businesses from testing the ban's constitutionality in defense to a criminal prosecution." *Id.* Thus, the civil court had jurisdiction over the case. *Id.*

***Texas Propane Gas Association v. City of Houston***

The Texas Supreme Court has again addressed the issue of when a civil court may declare a penal statute unconstitutional and enjoin its enforcement in *Texas*

13

*Propane Gas Association. v. City of Houston*, 622 S.W.3d 791 (Tex. 2021). In *Texas Propane*, the gas association sued the city for a declaratory judgment that its ordinances regulating the liquefied petroleum gas ["LPG"] industry were unconstitutional because they were preempted by state law. *Id.* at 793. One of those ordinances imposed monetary penalties for a violation that ranged from $500 to $2,000 per day. *Id.* at 794. The city argued that "civil courts lack subject-matter jurisdiction to enforce the [gas association's] preemption claim because the local regulations it challenges carry criminal penalties." *Id.* at 793. The city argued that the case was controlled by *Morales*, and that *City of Laredo* and *Austin City Cemetery* should not be followed. *Id.* at 797. Specifically, the city argued that *City of Laredo* should not be followed because, in *Austin City Cemetery*, the ordinance threatened "the total destruction of the value of the challenger's property," whereas in *City* of *Laredo*, the "regulations posed much less of a threat to the [challengers'] property[.]" *Id.* at 798. Thus, the city would have had the civil jurisdiction limited to cases in which the criminal ordinance would "totally destroy" the value of the challenger's property. The supreme court rejected this argument, holding that "the threat of prosecution and the fines imposed in [both *City of Laredo* and *Texas Propane*] were similar." *Id.* Following *City of Laredo* and not *Morales*, the supreme court concluded that "just as in *City of Laredo*, the City's LPG regulations threaten irreparable injury to vested property rights." *Id.* at 798.

14

However, the supreme court did not stop after finding irreparable injury to the challengers' vested property rights—the court further concluded that the gas association's lawsuit was "not a 'criminal matter' outside a Texas civil court's subject-matter jurisdiction." *Id.* at 798. The court held that "to determine the boundary between civil and criminal jurisdiction, courts 'must look to the essence of the case to determine whether the issues it entails are more substantively criminal or civil.'" *Id.* (citing *Heckman*, 369 S.W.3d at 146).

> Disputes arising over the enforcement of statutes governed by the Texas Code of Criminal Procedure or as a result of or incident to a criminal prosecution are usually criminal law matters. But the mere existence of some criminal law question, characteristic, or contest will not transform a dispute that is fundamentally civil into a criminal law matter.

*Id.* (citations and internal punction omitted). The court noted that the "essence test" from *Heckman* "requires a holistic, common-sense analysis" and concluded that the essence of the gas association's case was "a dispute over the City's legal authority to regulate a specific category of commercial activity, the LPG industry." *Id.* at 798. In so holding, the supreme court stated:

> Though violating the City's LPG regulations may result in a criminal proceeding or monetary penalty, that fact is merely incidental to the legal issue TPGA raises. Accepting the City's argument would allow a political subdivision to evade a preemption challenge by cloaking its commercial regulations with criminal features. And it would result in the anomaly of civil courts having jurisdiction to adjudicate the validity of local LPG regulations that do not carry criminal penalties but no jurisdiction to adjudicate local regulations that do.

15

Both *Morales* and *City of Laredo* repeated the rule that a civil court has jurisdiction to declare a criminal statute invalid only when irreparable injury to vested property rights is threatened. Viewed in the context of our case law as a whole, the rule is but a corollary to the ultimate test articulated in *Heckman*: looking to the essence of the case, are the issues presented more substantively civil or criminal? Protection of property rights is a core civil-law function. In a suit challenging the constitutionality of a criminal statute, the threat of irreparable injury to property rights may tip the scales in favor of the matter being a civil one.

The essence of this case is civil, as was the essence of *City of Laredo.* Accordingly, this case is within the trial court's subject-matter jurisdiction.

*Id.* at 799 (citations omitted).

### *Analysis*

The City contends that we are not compelled to follow *Texas Propane* because it is distinguishable. Specifically, the City contends that *Texas Propane* is distinguishable because the "essence" of the case here is criminal, not civil. We will address several points the City raises to support this assertion.

First, the City argues that, because there are pending criminal proceedings, the "only issues in this case are the viability of TitleMax's defenses to active criminal prosecution" and that "[t]he procedural posture of the criminal enforcement actions" makes the present case distinguishable.

We begin by noting that, at the time TitleMax filed suit in civil district court, there was no criminal prosecution, which was initiated *after* TitleMax first sought declaratory and injunctive relief. The issue is not whether the municipal court

16

criminal proceeding served to usurp the civil district court's subject-matter jurisdiction, but whether the civil district court had subject-matter jurisdiction at the time TitleMax's suit was filed. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9 (noting that because standing—in terms of a party's right to initiate a lawsuit and the trial court's power to hear it—is determined when suit is filed, subsequent events do not deprive the court of subject-matter jurisdiction); *see also Bell v. Moores*, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.] 1992, writ denied) ("A trial court determines its jurisdiction at the time a suit is filed. At that time, the court either has jurisdiction or it does not."). That there are now criminal prosecutions pending is certainly a factor to consider in conducting the "holistic, common-sense" analysis required for the *Texas Propane* "essence" test, but the existence of subsequently filed prosecutions is not outcome determinative.

Instead, we must determine if "the issues presented [in the case are] more substantively civil or criminal'? *See Texas Propane*, 622 S.W.3d at 799. In *Texas Propane*, the supreme court held that "[t]he essence of this case is a dispute over the city's legal authority to regulate a specific category of commercial activity, the LPG industry." *Id.* at 798. The supreme court noted that the gas association's substantive claims were (1) that a civil statute forbade the city from regulating any aspect of the industry without the Railroad Commission's permission, and that (2) the city's regulations were preempted by other regulations promulgated by the State pursuant

17

to a civil statute. *See id.* at 799. Because adjudicating the merits of the gas association's claims would turn on the scope of a civil statute, the court concluded that the "essence" of the case in *Texas Propane* was civil. *Id.*

In this case, TitleMax's petition alleges that the City's Ordinance, which requires repayment of the total amount of the loan transaction—including credit access business fees—in no more than four 25% installments, conflicts with section 393.602(b) of the Texas Finance Code, which provides that a credit access business fee may be calculated "daily, biweekly, monthly, or another periodic basis." *See* TEX. FIN. CODE § 393.602(b). TitleMax also asserts that the Ordinance, by eliminating any mens rea, conflicts with Texas Finance Code section 393.224 and Texas Penal Code section 6.02(a) & (b), both of which require a showing of a culpable mental state. *See* TEX. FIN. CODE § 393.224 (imposing administrative penalties for "knowingly and willfully violating Chapter 393 or a rule adopted under it and making such violation a Class B misdemeanor) and TEX. PENAL CODE § 6.02(a), (b) (requiring culpable mental state for Class B misdemeanors); *see also* TEX. FIN. CODE § 224.501 (imposing criminal penalties for violations of Chapter 393 and classifying such violations as Class B misdemeanors). Additionally, TitleMax claims that the Ordinances are unconstitutionally vague and impose excessive fines.

We believe that the "essence" of TitleMax's claims, like the challenged ordinance in *Texas Propane,* is essentially civil in nature and that the imposition of

18

the criminal monetary penalty is "merely incidental" to the issues TitleMax raises. *See Texas Propane*, 622 S.W.2d at 799. Resolving TitleMax's claims hinges on the proper interpretation of state civil statutes and whether those state civil statutes preempt the actions taken by the City in enacting the Ordinances. Like the ordinance in *Texas Propane*, "[t]he 'essence' of this case is a dispute over the City's legal authority to regulate a specific category of commercial activity." *Id.* In *Texas Propane*, the supreme court rejected using the existence of criminal penalties as a litmus test in determining whether an action was essentially civil or criminal:

> Though violating the City's LPG regulations may result in a criminal proceeding or monetary penalty, that fact is merely incidental to the legal issue [the gas association] raises. Accepting the City's argument would allow a political subdivision to evade a preemption challenge by cloaking its commercial regulation with criminal features. And it would result in the anomaly of civil courts having jurisdiction to adjudicate the validity of local LPG regulations that do not carry criminal penalties but no jurisdiction to adjudicate local regulations that do.

*Id.*

We agree that the civil district court's jurisdiction does not hinge upon whether there is a criminal penalty attached to the statute; the issue is whether the City had the authority to enact the statute in the first place, an issue that requires the interpretation of state civil statutes.

This leads us to consider the State's second argument, i.e., that TitleMax has no threatened "vested property interest" justifying its invocation of the civil court's

equity jurisdiction. Specifically, the City cites *Texas Propane* to argue that only a "substantial per-violation fine that effectively preclude[s] small local businesses from testing the ban's constitutionality in defense to a criminal prosecution" is a violation that threatens vested property rights. *See id.* (citing *City of Laredo*, 369 S.W.3d at 146). Indeed, the trial court premised its ruling on this basis, noting that the "plaintiff is not a small local business" and that it "has nearly 275 locations across Texas, including nine locations in Austin."

While it is true that *Texas Propane* quotes *City of Laredo*'s holding that, in that case, a "substantial per-violation fine that effectively precludes small local businesses from testing the ban's constitutionality" was a threatened irreparable injury to vested property rights, nothing in either opinion suggests that *only* small local businesses can seek declaratory or injunctive relief from ordinances with statutory penalties that threaten irreparable injury to their vested property rights. To determine which plaintiffs have standing to bring such a challenge in civil district court based simply on the size of their business is nonsensical. Either the civil district court has jurisdiction to determine cases that threaten irreparable injury to vested property rights or it does not. Indeed, the ordinance involved in *City of Laredo* applied to any "commercial establishment" that used plastic or paper "checkout bags." 550 S.W.3d at 590. Presumably not all the merchants in the Laredo Merchants Association were small local businesses in that the ordinance applied to any

20

"commercial establishment." And, the gas association in *Texas Propane* was a trade association composed of "300 members statewide," whose members included "producers, wholesalers, propane retailers, manufacturers, fabricators, distributors, service providers, engineers, plumbers, RV parks, associations and other involved in the propane industry." 622 S.W.3d at 793 n.5. Again, nothing suggests that all members of the merchant's association were "small local businesses" or that such a status was a lynchpin for standing.

In both *City of Laredo* and *Texas Propane*, the supreme court focused on the "threat of prosecution and the fines imposed." *Id.* at 798. In *City of Laredo*, the challenged ordinance imposed monetary penalties of up to $2,000 per violation plus court costs and expenses. *Id.* at 796 n.23. In *Texas Propane*, the challenged ordinances imposed monetary penalties for a violation that ranged from $500 to $2,000 per day. *Id.* at 794. In both cases, the supreme court concluded that these "substantial per-violation" fines threatened irreparable injury to the challengers' vested property rights. Similarly, in this case the challenged ordinance imposes a fine not to exceed $500 and provides that each day that a violation occurs is a separate offense. Austin, Tex. Code § 4-12-26. Thus, following both *City of Laredo* and *Texas Propane*, we conclude that TitleMax has shown a threatened irreparable injury to its vested property rights.

21

In sum, we conclude that *City of Laredo* and *Texas Propane* are indistinguishable. Because TitleMax has shown a threatened irreparable injury to its vested property rights and because the "essence" of its claims is not a "criminal law matter" outside a Texas civil court's subject-matter jurisdiction, we hold that the trial court erred in granting the City's Plea to the Jurisdiction and dismissing TitleMax's claims.

## CONCLUSION

Because the civil district court has subject-matter jurisdiction, we reverse the trial court's order dismissing TitleMax's claims and remand the case for further proceedings.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Rivas-Molloy and Guerra.